179 F.3d 946
 NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC., Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
Department of Veterans Affairs Medical Center, Lexington,
Kentucky, Intervenor.
National Association of Government Employees, Local R1-8, Petitioner,
v.
Federal Labor Relations Authority, Respondent.
Department of the Air Force, 647th Air Base Group, Hanscom
Air Force Base, Massachusetts, Intervenor.
Patent Office Professional Association, Petitioner,
v.
Federal Labor Relations Authority, Respondent.
United States Department of Commerce, Patent and Trademark
Division, Intervenor.
 Nos. 98-1313, 98-1317 and 98-1377.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 11, 1999.
Decided June 25, 1999.
 
 On Petitions for Review of Orders of the Federal Labor Relations Authority.
 Robert H. Shriver, III argued the cause for the petitioners. Gregory O'Duden and Barbara A. Atkin were on brief for petitioner Patent Office Professional Association. Neil C. Bonney was on brief for petitioners National Association of Government Employees, Inc. and National Association of Government Employees, Local R1-8.
 David M. Smith, Solicitor, Federal Labor Relations Authority, argued the cause for the respondent. William R. Tobey, Deputy Solicitor, and Ann M. Boehm, Attorney, Federal Labor Relations Authority, were on brief for the respondent.
 Alfred Mollin, Counsel, United States Department of Justice, argued the cause for the intervenors. David W. Ogden, Acting Assistant Attorney General, and William Kanter, Deputy Director, United States Department of Justice, were on brief for the intervenors.
 Mark D. Roth, Charles A. Hobbie and Kevin M. Grile were on brief for amicus curiae American Federation of Government Employees, AFL-CIO.
 Before: HENDERSON, RANDOLPH and GARLAND, Circuit Judges.
 Opinion for the court filed by Circuit Judge HENDERSON.
 KAREN LeCRAFT HENDERSON, Circuit Judge:
 
 
 1
 The petitioners, labor unions representing federal employees, seek review of the decisions of the Federal Labor Relations Authority (FLRA or Authority) that three federal agencies did not commit unfair labor practices when they refused to bargain over matters covered by section 7106(b)(1) of the Federal Service Labor-Management Relations Statute (FSLMRS), 5 U.S.C. § 7106(b)(1). They contend that the FLRA incorrectly determined that section 2(d) of Executive Order 12871 (EO 12871), 58 Fed.Reg. 52,201, 52,202-03 (1993), which provides that agencies "shall ... negotiate over the subjects set forth in 5 U.S.C. § 7106(b)(1)," did not constitute an election to bargain over matters covered by 5 U.S.C. § 7106(b)(1). We agree with the FLRA and hold that section 2(d) of EO 12871 did not effect an election under 5 U.S.C. § 7106(b)(1). Accordingly, we deny the petitions for review.[1]
 
 I.
 
 2
 The Patent Office Professional Association (POPA) and the National Association of Government Employees (NAGE) are labor unions representing federal employees. The United States Department of Commerce, Patent and Trademark Office (PTO), the United States Department of Veterans Affairs (Veteran Affairs) and the United States Department of the Air Force (Air Force) (collectively agencies) are federal agencies subject to the FSLMRS's collective bargaining requirement and thus must bargain with their employees over all labor issues not statutorily excluded therefrom. See 5 U.S.C. § 7102 ("Except as otherwise provided" federal employees have right to unionize and "to engage in collective bargaining"). Relevant here, 5 U.S.C. § 7106(a)(2) excludes certain "management rights" from the obligation to negotiate.[2] The right not to bargain over management rights is, however, limited by 5 U.S.C. § 7106(b).[3] Section 7106(b) requires an agency to negotiate about the procedures it uses in exercising its management rights, 5 U.S.C. § 7106(b)(2), as well as the "appropriate arrangements for employees adversely affected" by the exercise of management rights, id. § 7106(b)(3). Section 7106(b)(1) also authorizes the agency, "at [its] election," to negotiate on certain enumerated matters. 5 U.S.C. § 7106(b)(1); see also Association of Civilian Technicians, Montana Air Chapter v. FLRA, 22 F.3d 1150, 1155 (D.C.Cir.1994) (explaining relationship between § 7106(a) and § 7106(b)(1)).
 
 
 3
 On October 1, 1993 the President issued EO 12871, entitled "Labor-Management Partnerships." The introductory provisions declare its purpose is "to establish a new form of labormanagement relations throughout the executive branch to promote the principles and recommendations adopted as a result of the National Performance Review." 58 fed. Reg. at 52,201. Section 2 of EO 12871 provides in part that "[t]he head of each agency ... shall ... (d) negotiate over the subjects set forth in 5 U.S.C. § 7106(b)(1), and instruct subordinate officials to do the same." 58 Fed.Reg. at 52,202-03.[4] Section 3 provides that
 
 
 4
 [t]his order is intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to administrative or judicial review, or any other right, substantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.
 
 
 5
 Id. at 52,203.
 
 
 6
 On December 16, 1993, the Office of Personnel Management (OPM) issued "Guidance for Implementing Executive Order 12871" (Guidance). The Guidance declares that, according to EO 12871, "bargaining over the subjects set forth in 5 U.S.C. § 7106(b)(1) is now mandatory, and a failure by agency managers to engage in such bargaining would be inconsistent with the President's directive." POPA Br. atA-5. OPM also noted that
 
 
 7
 [i]n the event the parties are unable to reach an agreement, they are encouraged to use the Federal Mediation and Conciliation Service as well as any other mutually agreed-upon dispute resolution processes.... If that does not result in an agreement, either party may, in accordance with 5 U.S.C. § 7119, take the impasse to the Federal Service Impasses Panel or to an arbitrator agreed upon by the parties under the procedures approved by the Panel.
 
 
 8
 Id.
 
 
 9
 After the issuance of the Guidance, the three respondent agencies refused to bargain over various management rights issues.[5] NAGE and POPA then filed unfair labor charges against the agencies. After conducting hearings, the administrative law judge (ALJ) in each case ruled that, with one exception, the agencies had not committed unfair labor practices when they refused to bargain over section 7106 (b)(1) issues because EO 12871 did not constitute a section 7106(b)(1) election.[6] See United States Dep't of Veterans Affairs Med. Ctr., Lexington, Ky., Case No. CH-CA-50399 (Aug. 26, 1997) (NAGE Joint Appendix (JA) 19-25); United States Dep't of the Air Force, Hanson AFB, Mass., Case No. BN-CA-41011 (July 31, 1996) (NAGE JA 33-37); United States Dep't of Commerce, Patent & Trademark Office, Case No. WA-CA-40743 (July 9, 1996) (POPA JA 32-46). NAGE and POPA then filed exceptions to the respective ALJ's rulings. On November 17, 1997 the FLRA decided that PTO had refused to negotiate on a section 7106(b)(1) matter. See United States Dep't of Commerce, Patent & Trademark Office (Commerce I), 53 F.L.R.A. 858 (1997) (discussed supra note 6). The Authority concluded, however, that the record was inadequate for it to determine if EO 12871 effected an election. Accordingly, it deferred consideration of the issue and invited additional submissions from the parties and amicus curiae.[7] See Commerce I, 53 F.L.R.A. at 879; see also 62 Fed.Reg. 62,315 (1997). After considering the submissions, the FLRA ruled that EO 12871 did not effect an election to negotiate on section 7106(b)(1) issues. See United States Dep't of Commerce, Patent & Trademark Office (Commerce II), 54 F.L.R.A No. 43 (1998). Accordingly, it found that PTO's refusal to negotiate did not constitute an unfair labor practice. Subsequently, the FLRA rejected NAGE's claims of unfair labor practices against the Air Force and Veteran Affairs based on its decision in Commerce II. See United States Dep't of Veterans Affairs Med. Ctr., Lexington, Ky., 54 F.L.R.A. No. 44 (June 19, 1998); United States Dep't of the Air Force, Hanson AFB, Mass., 54 F.L.R.A. No. 46 (June 19, 1998). POPA and NAGE then petitioned this court for review. The respondent agencies below intervened.
 
 II.
 
 10
 While "the Authority is entitled to considerable deference when it exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations," Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983), we do not defer when the Authority interprets statutes (and regulations) outside its domain. See National Treasury Employees Union v. FLRA (NTEU), 848 F.2d 1273, 1275 (D.C.Cir.1988) ("[W]e need not defer to [the FLRA's] interpretation of ... regulations promulgated by other agencies."); INS v. FLRA, 709 F.2d 724, 729 n. 21 (D.C.Cir.1983) ("[The FLRA's] reconciliation involves interpreting a statutory provision not within its enabling statute--a provision not within its expertise. Hence we need not defer to it."); see also American Fed'n of Gov't Employees, Local 2782 v. FLRA, 803 F.2d 737, 740 n. 1 (D.C.Cir.1986) (declining to adopt FLRA's "novel proposition" that it was entitled to "middle level deference" when interpreting OPM's Federal Practice Manual). Therefore, because the FLRA's decision is based on an interpretation of EO 12871, and not the FSLMRS, we review its determination de novo. See NTEU, 848 F.2d at 1275. "[W]e shall, of course, follow its reasoning to the extent that we deem it sound." Department of Treasury v. FLRA, 837 F.2d 1163, 1167 (D.C.Cir.1988).
 
 
 11
 As the parties agree, section 2(d) of the EO is mandatory--"[t]he head of each agency ... shall ... negotiate." Contrary to the petitioners' assertion, however, the mandatory language does not constitute a section 7106(b)(1) election. First, the plain language of the EO does not recite that the President elects to negotiate; instead, it declares that he has directed his subordinates to take certain action. As the FLRA noted, construing the EO to constitute a direction, but not an election, gives meaning to the "precise words" of section 2(d) by recognizing that "[d]irecting another to undertake an act is not necessarily the same as undertaking the act oneself." Commerce II, 54 F.L.R.A. No. 43, at 19. This distinction is not merely an "immaterial semantic" one, as POPA suggests. POPA Br. at 26. For example, if the President orders the Secretary of State to terminate an employee, the order does not effect the termination--only the Secretary of State can terminate an employee whom the Secretary was statutorily authorized to appoint. See NTEU v. Regan, 663 F.2d 239, 247-48 (D.C.Cir.1981).
 
 
 12
 Moreover, contrary to NAGE's claim, our interpretation does not lead to the "absurd result" that an "agency that obeys an Executive Order ... will be subject to the coverage of the Statute, but the insubordinate executive agency that disregards the President's order may evade statutory coverage." NAGE's Br. at 34. An insubordinate agency is subject to Executive Branch enforcement of the EO through persuasion and, ultimately, termination of the resisting official. Cf. NTEU, 663 F.2d at 247-48 ("The President can, of course, order the Secretary of State to revoke the appointment, and can fire the Secretary of Defense if he refuses to revoke it."). This result is not, as the petitioners assert, inconsistent with the concept of a "unitary executive." Rather, by interpreting EO 12871 as we do, that is, as an order but no more, we reaffirm the President's authority "[t]o insure [his] control and supervision over the Executive Branch," Sierra Club v. Costle, 657 F.2d 298, 405 (D.C.Cir.1981), but without finding him to have exercised that control through any means beyond an order to his subordinates.
 
 
 13
 More important, careful examination of section 2(d), as well as of the remainder of EO 12871, manifests that the President did not intend to "translate[ ] the verb 'shall' into ... an election, making the direction to agencies enforceable not only by the President as chief executive, but also by a prosecutor through adjudicatory proceedings before the Authority, appealable to and ultimately enforceable by the Federal courts." Commerce II, 54 F.L.R.A. No. 43, at 18. Section 3, as earlier noted, provides that the EO "is intended only to improve the internal management" and "does not[ ] create any right to administrative or judicial review, or any other right, substantive or procedural, enforceable by a party." 58 Fed.Reg. at 52,203. Cf. John Hancock Mut. Life Ins. Co. v. Harris Truck & Sav. Bank, 510 U.S. 86, 94-95, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (courts interpret statutes by "looking to the provisions of the whole law").
 
 
 14
 Because the language of EO 12871 in its entirety is clear, and because the petitioners provide no reason to depart therefrom,[8] we conclude that EO 12871 does not constitute a section 7106(b)(1) election. Accordingly, the petitions for review are
 
 
 15
 Denied.
 
 
 
 [1]
 On April 15, 1999 we issued an order consolidating POPA v. FLRA, No. 98-1377 with NAGE v. FLRA, Nos. 98-1313, 98-1317 for oral argument and, now, disposition
 
 
 [2]
 Section 7106(a) (2) provides:
 (a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency--
 ...
 (2) in accordance with applicable laws--
 (A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
 (B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;
 (C) with respect to filling positions, to make selections for appointments from--
 (i) among properly ranked and certified candidates for promotion; or
 (ii) any other appropriate source; and
 (D) to take whatever actions may be necessary to carry out the agency mission during emergencies.
 5 U.S.C. § 7106(a)(2).
 
 
 [3]
 The relevant part of section 7106(b) provides:
 (b) Nothing in this section shall preclude any agency and any labor organization from negotiating--
 (1) at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work.
 5 U.S.C. § 7106(b)(1).
 
 
 [4]
 Section 2 of EO 12871 provides:
 IMPLEMENTATION OF LABOR-MANAGEMENT PARTNERSHIPS THROUGHOUT THE EXECUTIVE BRANCH. The head of each agency subject to the provisions of chapter 71 of title 5, United States Code shall:
 (a) create labor-management partnerships by forming labormanagement committees or councils at appropriate levels, or adapting existing councils or committees if such groups exist, to help reform Government;
 (b) involve employees and their union representatives as full partners with management representatives to identify problems and craft solutions to better serve the agency's customers and mission;
 (c) provide systematic training of appropriate agency employees (including line managers, first line supervisors, and union representatives who are Federal employees) in consensual methods of dispute resolution, such as alternative dispute resolution techniques and interest-based bargaining approaches;
 (d) negotiate over the subjects set forth in 5 U.S.C. 7106(b)(1), and instruct subordinate officials to do the same; and
 (e) evaluate progress and improvements in organizational performance resulting from the labor-management partnerships.
 
 
 [58]
 Fed.Reg. at 52,202-03
 
 
 [5]
 PTO refused to bargain over whether to hire computer science patent examiners for two-year terms or as permanent appointees, the Air Force filled several vacant positions without negotiation and the Veteran Affairs implemented, without negotiation, its decision to allow lab technicians to perform "certain Dental Assistant duties on a regular rotational basis." NAGE JA 21
 
 
 [6]
 In Department of Commerce, the ALJ found that PTO did commit an unfair labor practice by failing to negotiate regarding the implementation of its decision to hire new patent examiners. See POPA Joint Appendix (JA) 38. The Authority affirmed this holding, United States Dep't of Commerce, Patent & Trademark Office, 53 F.L.R.A. 858, 859 (1997), and PTO has not appealed
 
 
 [7]
 Amici briefs were submitted by: (1) OPM; (2) Department of the Interior; (3) American Federation of Government Employees, AFL-CIO and the Public Employee Department of the Labor-Congress of Industrial Organizations (AFGE); (4) Association of Civilian Technicians; (5) National Air Traffic Controllers Association; (6) National Treasury Employees Union; (7) Senior Executives Association; and (8) Professional Airways Systems Specialists. Commerce II, 54 F.L.R.A. no. 43 at 3 n. 4. Only AFGE appears as amicus before us
 
 
 [8]
 The petitioners argue that because OPM is the " 'controlling agency regarding civil service matters,' " POPA Br. at 29, its Guidance provides strong evidence that the EO effected an election. But the Guidance, assuming it reflects OPM's belief that the EO effected an election, is insufficient to overcome the plain language of the EO. Cf. Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633, (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." (quotations omitted))