204 F.3d 1272 (9th Cir. 2000)
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO (AFGE), Council 147, Petitioner, SOCIAL SECURITY ADMINISTRATION, Respondent-Intervenor,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
 No. 98-70912
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted December 8, 1999
Filed March 3, 2000
 
 COUNSEL: Kevin M. Grile (argued), American Federation of Government Employees, AFL-CIO, Chicago, Illinois, for the petitioner.
 David M. Smith (argued) and Ann M. Boehm, Federal Labor Relations Authority, Washington, D.C., for the respondent.
 Alfred R. Mollin (argued), United States Department of Justice, Washington, D.C., for the intervenor.
 On Petition for Review of a Decision of the Federal Labor Relations Authority. FLRA No. 54-FLRA-45
 Before: Charles Wiggins, Diarmuid F. O'Scannlain, and Michael Daly Hawkins, Circuit Judges.
 HAWKINS, Circuit Judge:
 
 
 1
 We must decide whether a district office of the Social Security Administration (the "Agency") committed an unfair labor practice when it refused to bargain over staffing levels pursuant to section 7106(b)(1) of the Federal Service LaborManagement Relations Statute (the "Statute"). Although section 7106(b)(1) only provides for bargaining "at the election of the agency," the American Federation of Government Employees, AFL-CIO, Council 147 (the "Union") contends that the President made this election for the Agency through Executive Order 12871, which directs all agencies to bargain over section 7106(b)(1) topics. After the Federal Labor Relations Authority ("FLRA") rejected this argument, the Union petitioned this court for review. We now affirm the FLRA's decision and deny the petition for review.
 
 Facts and Procedural Background
 
 2
 The Union is the designated labor representative for Agency employees in the San Francisco region, including employees working in the Santa Rosa district office. In October 1994, Union member Steve Matich, a claims representative, asked to move from one unit to another within the district office. Matich apparently expected that, if moved, he would trade places with a claims representative in the other unit. However, when the Agency's district manager told Union officials she was considering the transfer, she stated that Matich's transfer, if granted, would not be accompanied by any other moves.
 
 
 3
 Because the Union was concerned that a unilateral transfer would unbalance workloadsin the two units, it requested that no changes be made until the Union and Agency "have bargained to agreement." In making this request, the Union cited section 7106(b)(1) of the Statute, which provides for bargaining "at the election of the agency, on the numbers, types, and grades of employees or positions assigned to any organizational subdivision, work project, or tour of duty, or on the technology, methods, and means of performing work. " 5 U.S.C. S 7106(b)(1). Although section 7106(b)(1) does not give unions a right to bargain unless an agency elects to, the Union maintained that the President had made this election on behalf of the Agency through Executive Order 12871 (the "Order").
 
 
 4
 The President issued the Order on October 1, 1993. Its purpose, as stated in the opening paragraph, is to involve "Federal Government employees and their union representatives" in "achieving the National Performance Review's Government reform objectives." 58 Fed. Reg. 52201, 52201 (1993). Among the provisions of the Order is section 2(d), which falls under a heading titled "Implementation of Labor-Management Partnerships Throughout the Executive Branch." Section 2(d) states that "[t]he head of each agency subject to the provisions of Chapter 71 of title 5, United States Code shall . . . . negotiate over the subjects set forth in 5 U.S.C. S 7106(b)(1), and instruct subordinate officials to do the same." Id. at 52202-03.
 
 
 5
 Section 3 of the Order is titled "No Administrative or Judicial Review." It provides as follows:
 
 
 6
 This order is intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to admin istrative or judicial review, or any other right, sub stantive or procedural, enforceable by a party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.
 
 
 7
 Id. at 52203.
 
 
 8
 After receiving the Union's request to bargain, the Agency moved Matich to another unit without replacing him. The Agency informed Union officials that it would negotiate over the implementation and impact of the transfer, as required by 5 U.S.C. SS 7016(b)(2) and 7106(b)(3),[1] but would not bargain over staffing levels. The Union then filed an unfair labor practice charge pursuant to 5 U.S.C. SS 7116(a)(1) and 7116(a)(5),[2] alleging that the Agency committed an unfair labor practice by unilaterally changing staffing levels without giving the Union an opportunity to bargain. Both the ALJ and the FLRA rejected this argument, finding that no unfair labor practice had occurred because the Order did not constitute an election for purposes of section 7106(b).[3]
 
 Standard of Review
 
 9
 We give deference to an agency's interpretation of statutes and executive orders it is charged with administering. See NLRB v. Kolkka, 170 F.3d 937, 939 (9th Cir. 1999) (statute); Kester v. Campbell, 652 F.2d 13, 15 (9th Cir. 1981) (executive order); University of S. Cal. v. Cost of Living Council, 472 F.2d 1065, 1068 (9th Cir. 1972) (executive order). When an agency interprets a statute outside its administration, however, we review that interpretation de novo.[4] See J.L. v. Social Sec. Admin., 971 F.2d 260, 268 (9th Cir. 1992) (no deference to SSA construction of Rehabilitation Act); see also FLRA v. U.S. Dep't of Treasury, Fin. Mgmt. Serv., 884 F.2d 1446, 1451 (D.C. Cir. 1989) (no deference to FLRA's interpretation of Privacy Act).
 
 
 10
 In this case, the FLRA interpreted an executive order dealing with labor-management partnerships in the federal government. Although the Order relates to matters under the FLRA's responsibility, the FLRA was not charged with administering the Order such that its interpretation is entitled to deference. Therefore, we review the FLRA's interpretation of the Order de novo.
 
 Analysis
 
 11
 We start with the language of the Order. Section 2(d) of Executive Order 12871 states that "[t]he head of each agency subject to the provisions of Chapter 71 of title 5, United States Code shall . . . . negotiate over the subjects set forth in 5 U.S.C. S 7106(b)(1), and instruct subordinate officials to do the same." 58 Fed. Reg. at 52202-03. There is no question that the Agency is subject to the provisions of Chapter 71 of title 5, which prescribes the rights and obligations of federal employees. There is also no question that the Order is mandatory and that agencies failing to obey the Order are answerable to the President.
 
 
 12
 We cannot conclude, however, that the language of the Order constitutes an election to bargain. As the D.C. Circuit recently pointed out in a related case, the Order does not state that the President has elected to negotiate with labor unions. See National Ass'n of Gov't Employees, Inc., v. FLRA , 179 F.3d 946, 950 (D.C. Cir. 1999). Instead, it directs the head of each agency to negotiate and to instruct subordinates to do the same. See id. The distinction between the two statements may be subtle, but as the FLRA noted, "directing another to take an act is not necessarily the same as undertaking the act oneself." United States Dep't of Commerce, Patent and Trademark Office ("Commerce II"), 54 FLRA No. 43, at 19 (1998). This distinction is especially important given that the President easily could have used the term "election" if that is what was intended.[5]
 
 
 13
 That the President did not intend to make an election is made clear by section 3 of the Order. Section 3 states that the Order is "intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to administrative or judicial review." It seems highly unlikely that a President who intended to make a legally enforceable election on behalf of all government agencies would at the same time declare that the order does not create any judicially or administratively enforceable rights. The Union argues that section 3 does not preclude a finding that the Order constitutes an election under section 7106(b)(1). Although it concedes that section 3's language with respect to judicial review prevents a party from enforcing the order standing alone, the Union maintains that it does not seek to enforce the order itself. Instead, it seeks to enforce section 7106(b)(1)'s provision for bargaining when an election is made, and it relies on the Order only to demonstrate that an election has in fact been made.
 
 
 14
 The Union's argument is intriguing, as far as it goes. But even if section 3 does not bar us from giving effect to the Order through enforcement of section 7106(b)(1), section 3 at least demonstrates that the Order was not intended to constitute an election. Put another way, the Union's theory that it seeks only to enforce section 7106(b)(1) may resolve any jurisdictional problems created by section 3, but the theory cannot overcome the clear implication of section 3, which is that the Order was not intended to constitute a legally enforceable election.
 
 
 15
 The Union also argues that its position is supported by a guidance issued by the Office of Personnel Management ("OPM"), which states that "bargaining over the subjects set forth in 5 U.S.C. S 7106(b)(1) is now mandatory, and a failure by agency managers to engage in such bargaining would be inconsistent with the President's directive." Commerce II, 54 FLRA No. 43, at 15 (quoting OPM "Guidance for Implementing Executive Order 12871"). However, the guidance does not state that the Order constitutes an election, only that it is mandatory, and there has never been any dispute on that point. The Union argues that the Order could only be mandatory if it constituted an election because otherwise it would have no mandatory effect; it would only be a suggestion. But the President can discipline agency heads who fail to follow the Order, and in this sense the Order has a mandatory effect.
 
 
 16
 Because the language of the Order is clear and because the Union offers no persuasive reason to depart from that language, we conclude that Executive Order 12871 does not constitute an election to bargain. Accordingly, the Agency did not commit an unfair labor practice, and the Union's petition for review is denied.
 
 
 17
 PETITION DENIED.
 
 
 
 Notes:
 
 
 [1]
 Section 7106(b)(2) provides for bargaining over the "procedures which management officials of the agency will observe in exercising any authority under this section." 5 U.S.C. S 7106(b)(2). Section 7106(b)(3) provides for bargaining over "appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials." 5 U.S.C. S 7106(b)(3). Unlike section 7106(b)(1), these two sections do not give agencies discretion to bargain, but instead mandate bargaining.
 
 
 [2]
 Section 7116(a)(1) makes it an unfair labor practice "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter." 5 U.S.C. S 7116(a)(1). Section 7116(a)(5) makes it an unfair labor practice "to refuse to consult or negotiate in good faith with a labor organization as required by this chapter." 5 U.S.C. S 7116(a)5).
 
 
 [3]
 The FLRA decided this interpretative issue in a related case. See United States Dep't of Commerce, Patent and Trademark Office ("Commerce II"), 54 FLRA No. 43 (1998). It then applied the reasoning of that case to the facts of the present case. See Social Security Admin., Santa Rosa Dist. Office, Santa Rosa, California, 54 FLRA No. 45 (1998).
 
 
 [4]
 We are unaware of any 9th Circuit cases involving an agency's interpretation of an executive order it was not charged with administering. But
 when this court has shown deference to agency interpretations of executive orders, it has expressly noted that the agency was charged with administering the order. See Kester, 652 F.2d at 15; Cost of Living Council, 472 F.2d at 1068-69. We think it reasonable to conclude, therefore, that when an agency is not charged with administering an executive order, this court reviews the agency's interpretation of that order de novo.
 
 
 [5]
 The Union argues that the FLRA has frequently looked at negotiated language to determine that an agency has made an election to bargain and has not required use of the word "elect." To support this argument, it points to three cases: National Treasury Employees Union, Chapter 97, 45 FLRA 1242, 1250 (1992); National Ass'n of Gov't Employees, Local R475 Union, 24 FLRA 56, 62 (1986); Local 1917, American Fed'n of Gov't Employees, 13 FLRA 77, 78 (1983). These cases, however, do not stand for the proposition that an executive order or agency statement can constitute an election without using the word "elect. " Rather, in each case, the FLRA simply held that when an agency has signed a collective bargaining agreement containing topics covered by section 7106(b)(1) -such as staffing levels -the agency has elected to bargain over those topics; indeed, the agency has already bargained over those topics. In the present case, the Agency refused to bargain over section 7106(b)(1) topics, so we cannot point to its agreement on such topics as evidence that it actually elected to bargain.