Notice: This opinion is subject to formal revision before publication in the
Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify
the Clerk of any formal errors in order that corrections may be made
before the bound volumes go to press.

# United States Court of Appeals

#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――

Argued February 6, 2004　　　　　Decided April 6, 2004

No. 03-1127

NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES,
LOCAL R5–136,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
WASHINGTON, D.C.,
RESPONDENT

―――――

On Petition for Review of an Order of the
Federal Labor Relations Authority

―――――

*Jennifer Wasserstein* argued the cause and filed the briefs
for petitioner.

―――――

Bills of costs must be filed within 14 days after entry of judgment.
The court looks with disfavor upon motions to file bills of costs out
of time.

*Gregory O'Duden, Barbara A. Atkin*, and *Kerry L. Adams* were on the brief for *amicus curiae* National Treasury Employees Union in support of petitioner.

*David M. Shewchuk*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief were *David M. Smith*, Solicitor, and *William R. Tobey*, Deputy Solicitor. *James F. Blandford*, Attorney, entered an appearance.

Before: EDWARDS, GARLAND and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: This case involves two unfair labor practice charges filed by the National Association of Government Employees, Local R5-136 ("Union"), with the Federal Labor Relations Authority ("FLRA" or "Authority"). Based on these charges, General Counsel for the FLRA issued two complaints charging the Department of Veterans Affairs' Ralph H. Johnson Medical Center ("Medical Center") with refusing to bargain over employee parking in violation of the Federal Service Labor-Management Relations Statute ("Statute"), 5 U.S.C. §§ 7101-7135 (2000). The first complaint alleged that the Medical Center refused to bargain over proposed changes to the Medical Center's parking policies. The second complaint alleged that the Medical Center unilaterally adopted a practice of permitting patients to park in a designated "employee lot" without giving notice to, or bargaining with, the Union.

An Administrative Law Judge ("ALJ") ruled against the Medical Center on each complaint. The Authority reversed the ALJ's decision and dismissed the complaints. As to the first complaint, the Authority found that the Medical Center had complied with the Union's request to maintain the status quo pending completion of negotiations. The Authority therefore concluded that the Medical Center had met its duty to bargain by not taking any unilateral action until after the period for timely submission of bargaining proposals had run. As to the second complaint, the Authority determined that the Medical Center had no mandatory duty to bargain over

its decision to allow patients to park in the employee lot, because the decision concerned a "means of performing work" under 5 U.S.C. § 7106(b)(1). The Authority further found that the decision had no more than a *de minimis* impact on bargaining unit employees and that the Medical Center consequently was not obligated to bargain over the "impact and implementation" of the decision. The Union petitioned this court for review of the Authority's order.

We grant the petition for review in part and deny it in part. The Authority's decision to dismiss the first complaint is premised on an entirely untenable interpretation of the parties' collective bargaining agreement ("CBA"). Accordingly, we reverse the Authority's dismissal of the first complaint as arbitrary and capricious. As to the second complaint, we uphold the Authority's order. The Authority reasonably determined that allowing patients to park in the employee lot was a "means of performing work" exempt from any mandatory duty to bargain. We are barred from considering the Union's claim that the impact of the Medical Center's decision on bargaining unit employees was more than *de minimis*, because the Union failed to raise this claim before the Authority. We note that, in any event, the Authority's finding that the impact was *de minimis* was supported by substantial evidence.

## I. BACKGROUND

### A. Statutory Context

The Federal Service Labor-Management Relations Statute grants federal government employees the right to organize and engage in collective bargaining with respect to "conditions of employment." 5 U.S.C. § 7102. The Statute makes it an "unfair labor practice" for covered agencies to interfere with this right or to refuse to negotiate in good faith over conditions of employment. *See* 5 U.S.C. § 7116(a)(1), (5). While the term "conditions of employment" is defined broadly to include "personnel policies, practices, and matters . . . affecting working conditions," 5 U.S.C. § 7103(a)(14), the Statute exempts certain matters from the mandatory duty to

bargain, including management rights identified in § 7106. Section 7106(b)(1) identifies matters over which bargaining may take place "at the election of the agency," including decisions concerning "the technology, methods, and means of performing work." 5 U.S.C. § 7106(b)(1). "As to these decisions, the agency is permitted but not required to negotiate with the labor organization." *Am. Fed'n of Gov't Employees, AFL-CIO, Local 2441 v. FLRA*, 864 F.2d 178, 180 (D.C. Cir. 1988) ("*AFGE, Local 2441*"). Although an agency is not required to negotiate over a decision falling within the § 7106(b)(1) exception, an agency must negotiate over the "impact and implementation" of any such decision if it has more than a *de minimis* adverse effect on bargaining unit members' conditions of employment. *See, e.g.*, *Fed. Bureau of Prisons Fed. Correctional Inst., Bastrop, Tex.*, 55 F.L.R.A. 848, 852 (1999) ("*Bureau of Prisons*") (citing *Dep't of Health & Human Servs., Social Security Admin.*, 24 F.L.R.A. 403, 407–08 (1986)); *see also FLRA v. United States Dep't of Justice*, 994 F.2d 868, 872 (D.C. Cir. 1993).

## B. Factual Background

The collective bargaining relationship between the Union and the Medical Center is governed, in part, by a master collective bargaining agreement between the National Association of Government Employees and the Department of Veterans Affairs. *Dep't of Veterans Affairs, Ralph H. Johnson Med. Cent., Charleston, S.C.*, 58 F.L.R.A. 432, 440 (2003) ("*Dep't of Veterans Affairs*"). Article 39 of the CBA provides that "[p]arking is subject to local negotiations." Master Agreement Between the National Association of Government Employees and the Department of Veterans Affairs at 29 ("*CBA*"), *reprinted in* Joint Appendix ("J.A.") 247, 279. Article 11, Section 2 of the CBA establishes procedures for midterm negotiations (*i.e.*, those occurring during the term of the CBA), including the following requirements:

> A. The Employer shall notify the Union prior to the planned implementation of a proposed change to conditions of employment. The notice shall advise

the Union of the reason for the change and the proposed effective date.

B. The Union shall have fifteen (15) calendar days from the date of notification to request bargaining and to forward written proposals to the Employer except in emergency situations where a 15 day notice would not be practicable.

C. If the Union does not request bargaining within the time limit, the Employer may implement the proposed change(s).

D. Upon timely request by the Union, bargaining will normally commence within ten (10) calendar days, unless otherwise agreed upon by the parties.

*Id.* at 8-9, J.A. 258-59.

Under the Medical Center's parking policy, a parking lot located across the street from the rear of the Medical Center (designated Zone 7) is reserved for employee parking. *Dep't of Veterans Affairs*, 58 F.L.R.A. at 441. Patients and visitors are permitted to park in other areas. In addition to parking at the facility itself, the Medical Center rented an off-site lot known as the Elks Lot – with 50 to 100 spaces used primarily for patient and visitor parking – up until the fall of 1999, when the Medical Center lost its lease for the lot. The loss of the Elks Lot contributed to a shortage of patient parking. At any given time, 20 to 40 patients might be seen circling the Medical Center looking for parking. *Id.* Officials from the Medical Center's police service decided to address this problem by allowing patients to park in the employee lot during peak clinic hours, between 9:00 and 10:30 a.m., several days a week. The Union received no official notice of this decision. *Id.* at 442.

On August 24, 1999, the Union received a one-page notice from the Medical Center proposing changes to the " 'Employee Parking Lot' and Bravo Street" in order to "provide additional patient parking and to preclude traffic congestion on Bravo Street." *Id.* at 440. Attached to the notice was a revised parking policy for the Medical Center and a schematic

drawing of the employee parking lot. The changes to the parking policy included, *inter alia*, an increase in the fee for failure to return a parking-gate card upon conclusion of employment with the Medical Center. *Id.* The new parking policy did not alter the preexisting reservation of the Zone 7 parking lot for employee use. *Id.* at 442. No specific information on changes to Bravo Street was provided. *See id.* at 441.

On August 31, 1999, the Union submitted to the Medical Center a memorandum entitled "Proposed Parking Lot Changes," stating in relevant part:

1. The Union is in receipt of your memorandum . . . concerning proposed changes in parking. . . .

2. The Union hereby requests to negotiate the proposed parking lot changes. . . .

3. The Union will submit its proposals upon review when the information requested (attached) is provided.

4. The Union proposes at this time that all conditions of employment remain status quo.

5. Should you have any questions, contact the undersigned. . . .

Joint Ex. 5, *reprinted in* J.A. 236. The attached information request sought detailed information on changes to the Medical Center's parking policies and practices and requested a response by September 10, 1999. *See* Joint Ex. 6, J.A. 237-38.

After receiving no response from the Medical Center, the Union renewed its request for information on September 20, 1999, reiterating that it would submit proposals concerning the proposed parking changes upon review of the information. Joint Ex. 7, J.A. 239. In a memorandum dated October 27, 1999, the Medical Center responded to the information request. Joint Ex. 8, J.A. 240. On November 17, 1999 – approximately 15 days after receipt of the Medical Center's response to its information request – the Union submitted proposals regarding the Medical Center's proposed parking

changes. *Dep't of Veterans Affairs*, 58 F.L.R.A. at 441. The Union's proposals addressed parking on Bravo Street (although the Medical Center apparently had not given official notice of the proposed changes to Bravo Street), patient and visitor parking, disabled parking, emergency parking, and employee parking. *See id.*; *see also* Joint Ex. 9, J.A. 242.

After the Union submitted its November 17 proposals, the Medical Center implemented changes to Bravo Street, which runs along one side of the facility. The Medical Center hired a contractor who converted Bravo Street from a two-way to a one-way street, striped off approximately 24 parking spots on one side of the street, and erected a fence so that the street is no longer a through street. *Dep't of Veterans Affairs*, 58 F.L.R.A. at 441. Around the time of these actions, the Union president asked the Medical Center's representative why the Union had not received any response to its parking proposals. The Medical Center representative verbally indicated that a number of the Union's proposals were untimely, but would not specify which. Shortly after a December 21, 1999, meeting between Union and Medical Center representatives, the Medical Center notified the Union in writing that the Medical Center considered the Union's parking proposals untimely under the CBA. The Union requested an explanation but received no response. *Id.*

## C. Proceedings Below

The Union filed unfair labor practice charges against the Medical Center, and the General Counsel of the FLRA issued two complaints that were later consolidated. The first complaint alleged that the Medical Center had violated 5 U.S.C. § 7116(a)(1) and (5) by refusing to bargain in good faith over the Union's proposals concerning employee parking at the facility. The second complaint alleged that the Medical Center had unilaterally implemented a change in bargaining unit members' conditions of employment, in violation of § 7116(a)(1) and (5), by permitting patients to park in the employee parking lot without notifying the Union or bargaining.

The ALJ decided both complaints in favor of the Union. As to the first, the ALJ determined that the Union's August 31 proposal to maintain the status quo was timely. The ALJ found that the Medical Center failed either to bargain over this proposal or to notify the Union that the Medical Center considered the proposal to be non-negotiable. The Medical Center therefore violated its duty to bargain in good faith under § 7116(a)(1) and (5). *Id.* at 443-44. With regard to the second complaint, the ALJ determined that the Medical Center's decision to permit patients to park in the employee lot was a unilateral change to a condition of employment of bargaining unit members. The ALJ therefore concluded that the Medical Center had violated its duty under the CBA and § 7116(a)(1) and (5) to notify the Union before making this change. *Id.* at 444-45.

On appeal, the Authority reversed the ALJ's decision and dismissed both complaints, with one member of the Authority dissenting. With regard to the first complaint, the Authority found that the Union's November 17 proposals were untimely under the CBA, but that the August 31 "status quo" proposal was timely. The Authority determined that the Medical Center had fulfilled its bargaining obligations with respect to the status quo proposal. Specifically, the Medical Center had "maintained the status quo well beyond the contractual period authorizing bargaining" and had received no additional proposals within the CBA-mandated 15-day deadline. "Thus," according to the Authority, "there was nothing further to bargain and the [Medical Center] had no obligation to maintain the *status quo* until a non-existent bargaining obligation was concluded." *Id.* at 434-35.

Turning to the second complaint, the Authority determined that, while *employee parking* is a mandatory subject of bargaining, the Medical Center's decision to permit patients to park in the employee lot concerned *patient parking*. Relying on its decision in *American Federation of Government Employees, AFL-CIO, Local 3399*, 9 F.L.R.A. 1022 (1982) ("*AFGE, Local 3399*"), the Authority held that providing patient parking is a "means of performing work" under 5 U.S.C. § 7106(b)(1) and the decision at issue therefore was

not a mandatory subject of bargaining. *Dep't of Veterans Affairs*, 58 F.L.R.A. at 435. The Authority determined, moreover, that the Medical Center was not obligated to bargain over the impact and implementation of its decision, because the record did not support a determination that the decision had more than a *de minimis* effect on bargaining unit employees. *Id.* at 435-36.

The Union filed a timely petition for review with this court.

## II. ANALYSIS

### A. Standard and Scope of Review

We review the Authority's order to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A), 7123(c) (2000); *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97 n.7 (1983). Under this standard, we look to whether the Authority has offered a rational explanation for its decision, whether its decision is based on consideration of the relevant factors, and whether the decision is adequately supported by the facts found. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *FDIC v. FLRA*, 977 F.2d 1493, 1496 (D.C. Cir. 1992). The Authority's findings of fact are conclusive if supported by "substantial evidence on the record considered as a whole." 5 U.S.C. § 7123(c); *see also Pension Benefit Guar. Corp. v. FLRA*, 967 F.2d 658, 665 (D.C. Cir. 1992). This standard requires us to defer to the Authority's factual determinations if, taking into account any record evidence to the contrary, the record contains "such relevant evidence as a reasonable mind might accept as adequate to support" such determinations. *Thomas v. NLRB*, 213 F.3d 651, 657 (D.C. Cir. 2000) (quoting *Micro Pacific Dev. Inc. v. NLRB*, 178 F.3d 1325, 1329 (D.C. Cir. 1999)); *see also Lakeland Bus Lines, Inc. v. NLRB*, 347 F.3d 955, 961-62 (D.C. Cir. 2003). Under § 7123(c) of the Statute, we have jurisdiction to consider only those objections urged by the petitioner in proceedings before the Authority, "unless the failure or neglect to urge the

objection is excused because of extraordinary circumstances." 5 U.S.C. § 7123(c); *EEOC v. FLRA*, 476 U.S. 19, 23 (1986).

## B. First Complaint: Duty to Bargain Over the Union's Proposals

### 1. *Duty to Bargain Under the CBA*

As noted above, the Authority found that the Union's August 31 proposal was timely submitted under the CBA and interpreted the proposal as a request to maintain the status quo pending completion of bargaining. Although the Medical Center never bargained over the status quo proposal itself, the Authority determined that the Medical Center had complied with the proposal by maintaining the status quo until the CBA's 15-day deadline for submission of proposals had run. The Authority found that the Medical Center had no obligation to consider the November 17 proposals, because they were not timely submitted. The Authority's determinations rest on an implausible interpretation of the CBA. Even assuming that the Authority has the discretion to interpret a collective bargaining agreement where necessary to resolve an unfair labor practice claim, "we conclude that it abused that discretion . . . by reaching a result that is illogical on its own terms." *IRS v. FLRA*, 963 F.2d 429, 439 (D.C. Cir. 1992). Accordingly, we set aside the Authority's dismissal of the first complaint as arbitrary and capricious.

As noted above, the CBA requires the Medical Center to notify the Union of any proposed changes to a condition of employment, and provides that the Union "shall have fifteen (15) calendar days from the date of notification to request bargaining and to forward written proposals" to the Medical Center. *CBA* at 8, J.A. 258. The CBA authorizes the agency to implement its proposed changes "[i]f the Union does not request bargaining within the time limit." *Id.* at 9, J.A. 259. Furthermore, the CBA provides that "[u]pon timely request by the Union, bargaining will normally commence within ten (10) calendar days, unless otherwise agreed upon by the parties." *Id.*

In its August 31 submission, the Union clearly and unequivocally (1) requested to bargain over the proposed parking changes, and (2) proposed "at this time" that the status quo be maintained. *See* J.A. 236. It is undisputed that the August 31 submission was made within 15 days of notification of the proposed parking changes. The Union therefore met the CBA's deadline for requesting negotiation and submitting a written proposal.

At the same time, the Union requested further information on the basis of which it would formulate and submit further proposals. *Id.* The Union was entitled to make such a request, and neither the agency nor the Authority suggests otherwise. Subject to limited exceptions, the Statute requires the Medical Center to respond to a Union request to furnish "data . . . which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." 5 U.S.C. § 7114(b)(4)(B); *see also Am. Fed'n of Gov't Employees, Local 2343 v. FLRA*, 144 F.3d 85, 86-87 (D.C. Cir. 1998); *United States Dep't of Veterans Affairs, Wash., D.C. v. FLRA*, 1 F.3d 19, 22-23 (D.C. Cir. 1993). The Medical Center does not claim – and nothing in the record indicates – that the Union's information request in the instant case was somehow improper. Indeed, the Medical Center confirmed the legitimacy of the request by responding to it, albeit over two months later. Once the Union received the information it had requested, it promptly submitted its November 17 parking proposals – approximately 15 days after receipt of the information. *Dep't of Veterans Affairs*, 58 F.L.R.A. at 441.

Nothing in the CBA insulates the Medical Center from its duty to bargain over the Union's August 31 and November 17 proposals. Article 11, Section 2B of the CBA requires that the Union *initiate* the bargaining process by "request[ing] bargaining" and "forward[ing] written proposals" within 15 days from notification of the proposed change. This provision clearly requires the Union to submit an *opening* proposal within 15 days, and the Union met this requirement with its August 31 submission. But Section 2B cannot reasonably be interpreted to require the Union to put *all possible* proposals

on the table within that brief period, or to foreclose negotiation of any proposal submitted thereafter. Certainly nothing in the express language of Section 2B itself requires or supports this absurd reading of the parties' agreement. Moreover, Section 2C goes on to provide that, "[i]f the Union does not request bargaining within the time limit, the Employer may implement the proposed change(s)." *CBA* at 9, J.A. 259. The clear import of this provision is that once the Union meets its obligation to submit a timely request for bargaining, the Medical Center is foreclosed from implementing a proposed change in conditions of employment without satisfying its duty to bargain.

In addition to departing from the CBA's express terms, the Authority's reading of the CBA would lead to bizarre results. It appears to lock the Union into its initial bargaining position by permitting the agency to ignore as untimely any subsequent expression amplifying, supplementing, or clarifying the initial proposal. And it would effectively prevent the Union from developing proposals based on accurate information properly and timely requested from, but not promptly delivered by, the agency. The agency would need only delay its response to the Union's request for information until the 15-day period had elapsed – as the Medical Center did in this case – in order to avoid bargaining over any proposal submitted after that time. The agency would be rewarded, under this reading, for providing insufficient information when notifying the Union of proposed changes and for tardy responses to valid information requests. This cannot be the intended meaning of Article 11 of the CBA.

The fact that the Union's initial proposal requested maintenance of the status quo "at this time" does not alter our conclusion. Even if the Authority is correct in interpreting the Union's proposal to request maintenance of the status quo only "until the completion of bargaining," the Medical Center did not "comply" with this proposal – much less satisfy its bargaining obligations under the CBA and the Statute – merely by delaying implementation of changes until 15 days had elapsed. The Union timely initiated the bargaining process with its August 31 submission. Because the Medical

Center failed to respond, however, bargaining was never even commenced, let alone completed. The Medical Center implemented its proposed changes without ever responding to the Union's request to negotiate and without ever bargaining over the Union's August 31 or November 17 proposals. In so doing, the Medical Center violated the CBA and committed an unfair labor practice under § 7116(a)(1) and (5) by refusing to bargain in good faith over a condition of employment.

### 2. *Management Rights*

In a brief footnote to its order, the Authority noted that the Medical Center had characterized the parking policy changes at issue in the first complaint as relating to "additional patient parking." *Dep't of Veterans Affairs*, 58 F.L.R.A. at 435 n.4. On this basis, the Authority found that the policy changes governed patient, not employee, parking. The Authority therefore concluded that the policy changes implemented "means of performing work" under § 7106(b)(1) and were exempt from mandatory bargaining. *Id.* This finding is not supported by substantial evidence.

The ALJ determined that the parking policy changes at issue in the first complaint governed employee parking, which is a negotiable condition of employment. *Id.* at 442. The Medical Center did not contest this determination. Indeed, in the exceptions to the ALJ's decision filed with the Authority, the Medical Center readily acknowledged that the decision at issue in the first complaint "clearly affected the unit employees' conditions of employment" and was "fully negotiable." Respondent's Exceptions to the Decision of the ALJ at 10 ("Exceptions"), J.A. 46. In other words, the agency effectively conceded that the decision was *not* exempt from negotiation under § 7106(b)(1). As this issue was clearly raised before the Authority, we are not barred from considering it under § 7123(c).

It seems doubtful that the Authority was serious in suggesting that § 7106(b)(1) provides an independent alternative ground for dismissing the first complaint. The footnote looks like an ill-considered afterthought in the Authority's order. The body of the order does not examine whether the Union's

counterproposal would "directly interfere" with the purportedly mission-related purpose of the Medical Center's parking policy changes. *See AFGE, Local 2441*, 864 F.2d at 181-82. In addition, the order does not purport to address whether the Medical Center was obligated to bargain over the "impact and implementation" of the relevant decision on bargaining unit employees, a relevant issue if a matter is exempt from bargaining under § 7106(b)(1). *See Bureau of Prisons*, 55 F.L.R.A. at 852. And in the proceedings before this court, the Authority did not seek to defend its decision on the first complaint on the ground that the disputed policy changes related to patient parking. In short, there is no serious support for the alternative ground for dismissing the first complaint.

In any event, we hold that the Authority clearly erred in finding that the parking policy decision at issue in the first complaint was exempt from negotiation under § 7106(b)(1). The record here shows that the changes to the Medical Center parking policy directly governed employee parking. These changes included, for example, an increase in the charge levied on employees for failing to return a parking-gate card upon completing their employment. *Dep't of Veterans Affairs*, 58 F.L.R.A. at 440. And, as noted above, the Medical Center expressly conceded that the parking policy changes at issue in the first complaint "clearly affected the unit employees' conditions of employment" and were "fully negotiable." *See* Exceptions at 10, J.A. 46. The Authority's finding to the contrary cannot be sustained on the record before us.

## C. Second Complaint: Patient Parking in the "Employee Lot"

### 1. Management Rights

In disposing of the second complaint, the Authority determined that the Medical Center's unilateral decision to allow patients to park in the "employee lot" was a decision with respect to a "means of performing work" under § 7106(b)(1) and therefore was exempt from mandatory bargaining. The Union objects that the FLRA has long held that parking is a

fully negotiable condition of employment and that the decision at issue falls within the Medical Center's mandatory duty to bargain. On the record at hand, we uphold the Authority's determination.

The parties agree that provision of *employee* parking is a condition of employment that is fully negotiable under the Statute. *See, e.g.*, *United States Dep't of Labor, Wash., D.C.*, 44 F.L.R.A. 988, 994 (1992) ("*Dep't of Labor*"). However, it is also clear that an agency's decision regarding which of its facilities it will use to provide *patient* parking is a determination relating to a "means of performing work" under § 7106(b)(1), regardless of whether the decision incidentally affects employees. *AFGE, Local 3399*, 9 F.L.R.A. at 1023. We find no merit in the Union's contention that *AFGE, Local 3399* is distinguishable because the parties' collective bargaining agreement in this case makes parking subject to local negotiations. Moreover, the FLRA decisions relied upon by the Union do not support the proposition that all agency decisions involving parking are subject to mandatory bargaining. These decisions all involve agency actions that directly regulate the provision of employee parking, and none involves an assertion of the agency's rights under § 7106(b)(1). *See Dep't of Labor*, 44 F.L.R.A. at 994; *United States Immigration & Naturalization Serv.*, 43 F.L.R.A. 3, 9-10 (1991); *Philadelphia Naval Base, Philadelphia Naval Station & Philadelphia Naval Shipyard*, 37 F.L.R.A. 79, 87 (1990); *United States Dep't of the Air Force, Williams Air Force Base, Chandler, Az.*, 38 F.L.R.A. 549, 562 (1990).

An agency decision may fall within § 7106(b)(1)'s "means of performing work" exemption where the subject of the decision has a "direct and integral relationship" to the agency's mission. *See AFGE, Local 2441*, 864 F.2d at 181; *Dep't of Health & Human Servs., Indian Health Serv. v. FLRA*, 885 F.2d 911, 913-14 (D.C. Cir. 1989). In this case, the Authority reasonably determined that the provision of patient parking is directly and integrally related to the Department of Veterans Affairs' mission to provide health services to veterans. *See* 38 U.S.C. § 301(b) (2000) (stating that the Department's purpose is "to administer the laws providing benefits and

other services to veterans and the dependents and the beneficiaries of veterans"). The Authority likewise reasonably determined that the Medical Center's decision to allow patients to park in a lot in which employees also park was a determination with respect to the provision of patient, rather than employee, parking. The Medical Center's actions did not directly regulate employee parking, and any effect on bargaining unit employees was incidental. Accordingly, we uphold the Authority's determination that the Medical Center's decision to allow patients to park in the same lot with employees was exempt from mandatory bargaining under § 7106(b)(1).

*2. Procedural Objection to the Authority's Ruling*

The Union contends that the Medical Center never argued – either before the ALJ or in its exceptions filed with the Authority – that its decision to park patients in the employee lot was an exercise of its management rights under § 7106(b)(1). The Union claims that the Authority's *sua sponte* consideration of the management rights issue was forbidden by FLRA regulations. Section 7123(c) bars us from addressing this claim, because the Union failed to raise it below and no "extraordinary circumstance" excuses this failure. *See* 5 U.S.C. § 7123(c).

Where the Authority makes a *sua sponte* determination, the parties will not have had an opportunity to address the relevant issue. Nevertheless, § 7123(c) precludes us from considering a pertinent objection if the petitioner has not raised the objection before the Authority in a request for reconsideration. *See, e.g.*, *United States Dep't of Commerce v. FLRA*, 7 F.3d 243, 245-46 (D.C. Cir. 1993). An exception to this rule is recognized when a request for reconsideration would be "patently futile" in light of recent Authority decisions squarely addressing the issue in question. *See NLRB v. FLRA*, 2 F.3d 1190, 1196-97 (D.C. Cir. 1993); *United States Dep't of Interior Minerals Mgmt. Serv. v. FLRA*, 969 F.2d 1158, 1161 (D.C. Cir. 1992). The Union argues that a similar exception is warranted in the instant case, because the FLRA's dissenting member challenged the propriety of the

Authority raising the § 7106(b)(1) argument *sua sponte*, thus affording the Authority an opportunity to address the issue. In other words, the Union suggests that, if a dissenting member of the Authority could not persuade his colleagues, it would have been futile for the Union to pursue a petition for reconsideration.

The Union's argument implicitly presupposes that a party's position is always coterminous with a dissenting opinion. This is obviously incorrect. Indeed, it does not appear in this case that the dissent squarely raised the specific argument now asserted by the Union. The dissent argued that consideration of arguments not raised in the Medical Center's exceptions "violate[d] basic principles of appellate review, and . . . denie[d] the General Counsel its right to respond." *Dep't of Veterans Affairs*, 58 F.L.R.A. at 438. But the dissent never suggested that *sua sponte* consideration of arguments violates the procedural regulations (5 C.F.R. §§ 2423.40(d), 2429.5) upon which the Union premises its claim before this court. The Union also appears to assume that the persuasive power of a party's argument can never exceed the quality of a dissenting opinion. We reject this suggestion as well. Section 7123(c) requires a *party* to present its own views to the Authority in order to preserve a claim for judicial review.

We recently held that § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e) – which is an analog of 5 U.S.C. § 7123(c) – precluded us from considering an objection the petitioner did not raise in proceedings before the National Labor Relations Board, despite the fact that the same objection was raised by a dissenting member of the Board. *Contractors' Labor Pool, Inc. v. NLRB*, 323 F.3d 1051, 1061 (D.C. Cir. 2003). The relevant language of 29 U.S.C. § 160(e) and 5 U.S.C. § 7123(c) is virtually identical, and we see no reason to interpret the provisions differently in this context. *See EEOC*, 476 U.S. at 23 (relying on the Court's past interpretation of 29 U.S.C. § 160(e) to interpret 5 U.S.C. § 7123(c)). Accordingly, we find that the dissent below did not excuse the Union's failure to raise its objections in a request for reconsideration.

### *3. Impact and Implementation*

Finally, the Authority found that the Medical Center was not obligated to bargain over the impact and implementation of its decision to allow patients to park in the employee lot, because the record indicated that any adverse impact on bargaining unit employees was *de minimis*. *Dep't of Veterans Affairs*, 58 F.L.R.A. at 435-36. The Union claims that it was improperly denied the opportunity to contest this finding, because the impact-and-implementation issue was not the subject of the hearing before the ALJ and the Authority reached the issue *sua sponte*. The Union further asserts that the record demonstrates that the Medical Center's decision had more than a *de minimis* impact on bargaining unit employees. Again, § 7123(c) precludes us from considering these claims, because the Union failed to raise them before the Authority. If the Union was in a position to demonstrate that the Medical Center's actions had more than a *de minimis* impact on bargaining unit employees, it was obligated to put this claim before the Authority in a motion for reconsideration. In failing to do so, the Union waived any right to raise the claim before this court.

While we are precluded from reaching the merits of the Union's claim, we note that the Authority's *de minimis* finding is supported by substantial evidence on the record considered as a whole. A number of Medical Center personnel testified in proceedings before the ALJ that (1) patients were not permitted to park in the employee lot until 9:00 a.m., after the majority of the Medical Center's employees had already parked in the lot, *see* Tr. at 42-49, 63; (2) there was ample space for patients to park in the back of the lot, *see* Tr. at 42-49, 56-59, 63; and (3) no employees or Union representatives had made any complaint regarding the availability of spaces in the lot, *see* Tr. at 63, 78-79, 94-95, 97. The only evidence to the contrary was the testimony of Union president Fletcher Truesdell, who stated that parking in the employee lot is "real tight" the majority of the time, that "there are times" employees could not find parking in the lot, and that he had received unspecified complaints from two Union members about parking. *See* Tr. at 35-37. Even

taking Truesdell's testimony into account, there is substantial evidence to support the Authority's conclusion that any adverse effect on Union members was *de minimis.* *See Thomas*, 213 F.3d at 657 (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

### III. CONCLUSION

For the reasons set forth above, we grant the Union's petition for review in part and deny it in part. We hold that the Authority's dismissal of the first complaint was arbitrary and capricious and accordingly set aside that portion of the order. Finding no reversible error in the Authority's dismissal of the second complaint, we deny the petition for review as to that portion of the order.