# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 21, 2010        Decided July 23, 2010

No. 09-1119

NATIONAL LABOR RELATIONS BOARD,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

NATIONAL LABOR RELATIONS BOARD UNION,
INTERVENOR

Consolidated with 09-1148

On Petition for Review and Cross-Application for
Enforcement
of an Order of the Federal Labor Relations Authority

*Howard S. Scher*, Attorney, U.S. Department of Justice, argued the cause for petitioner. With him on the briefs were *William G. Kanter*, Attorney, and *Ronald E. Meisburg*, General Counsel, National Labor Relations Board.

*Rosa M. Koppel*, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. With her on the

brief were *William R. Tobey*, Deputy Solicitor, and *James F. Blandford*, Attorney.

Before: GINSBURG, GARLAND and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: The National Labor Relations Board petitions for review of an order of the Federal Labor Relations Authority holding the Board engaged in an unfair labor practice, in violation of the Federal Services Labor-Management Relations Statute, 5 U.S.C. § 7116(a)(5). The Authority cross-petitions for enforcement of its order. The Authority held the Board unlawfully refused to negotiate with the intervenor, the National Labor Relations Board Union, which the Authority had certified as the exclusive representative of a bargaining unit that included employees who report to the Board and employees who report to the General Counsel of the Board. The Board argues its refusal to bargain was not an unfair labor practice because the inclusion of Board-side and GC-side employees in a single bargaining unit conflicts with the separation of authority mandated by § 3(d) of its charter, the National Labor Relations Act, 29 U.S.C. § 153(d), by requiring the General Counsel to bargain jointly with the Board over his employees' conditions of employment. We hold the decision of the Authority conflicts with the Act, and accordingly grant the Board's petition for review and deny the Authority's cross-petition for enforcement of its order.

## I. Background

The agency responsible for overseeing labor relations in the private sector is at loggerheads with the agency

responsible for overseeing labor relations in the federal sector over — what else? — labor relations. Their disagreement arises from the interaction between the laws they respectively administer, the Act and the Statute. The Statute requires federal agencies to bargain with the representative of their employees in an "appropriate unit" for that purpose. Meanwhile, the Act makes the General Counsel independent of the Board. We explain each regime to the extent relevant before turning to the Authority's treatment of the interaction between the two laws in this case.

A. The Statute

The Statute provides a federal agency must "negotiate in good faith" with its employees' representative over the employees' "conditions of employment." 5 U.S.C. §§ 7102(2), 7116(a)(5). Should the employing agency and its employees' representative fail to reach an agreement, the Federal Service Impasses Panel may prescribe one. *See Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel*, 606 F.3d 780, 784 (D.C. Cir. 2010) ("the FSIP ... may ultimately 'take whatever action is necessary and not inconsistent with the Statute to resolve the impasse,' including binding arbitration" (quoting 5 U.S.C. § 7119(c)(5)(B)(iii)).

Collective bargaining presupposes that certain employees are entitled to be represented as a group, or a "bargaining unit" in the jargon of labor law, which raises the question who is to be in the unit. Under the Statute, it falls to the Authority to determine whether "the appropriate unit [with which an agency employer must negotiate] should be established on an agency, plant, installation, functional, or other basis." 5 U.S.C. § 7112. Once the Authority has delineated an appropriate unit, the employees in that unit may elect a

representative to negotiate on their behalf. 5 U.S.C. § 7111(a).

The Authority has recognized that its unit determination can intersect lines of supervisory authority within the employer agency. Just as all the employees in a bargaining unit must be represented by a single, exclusive representative for the purpose of collective bargaining, several otherwise distinct components of an agency must bargain as one if the bargaining unit includes employees from their respective domains. The Authority considers this effect upon the distribution of authority within the employing agency as one of several factors in determining whether an "[appropriate unit] determination will ensure a clear and identifiable community of interest among the employees," *U.S. Dep't of Justice*, 17 F.L.R.A. 58, 62 (1985) ("the locus and scope of personnel and labor relations authority and functions" is one of the "[p]rimary ... factors" considered "in determining whether there [is] a community of interest"), itself one of three statutory criteria for the appropriateness of a bargaining unit, 5 U.S.C. § 7112(a) ("The Authority ... shall determine any unit to be an appropriate unit only if the determination will ensure [1] a clear and identifiable community of interest among the employees in the unit and [2] will promote effective dealings with, and [3] efficiency of the operations of the agency involved").

The Authority considers the effect of a proposed unit upon both day-to-day personnel management within the employing agency, *see U.S. Dep't of the Treasury, Internal Revenue Serv.*, 56 F.L.R.A. 486, *8 (2000) (considering "existing personnel and labor relations policies and practices and chains of authority" established by agency practice), and formal lines of authority within that agency as created by statute, *see U.S. Dep't of Defense, Nat'l Guard Bureau*, 55

F.L.R.A. 657, 661 (1999) (holding nationwide bargaining unit not appropriate in part because, "[u]nder [law governing National Guard], general authority over employment is vested in state officials"). The latter consideration is meant to ensure the Statute is not applied in such a way as to conflict with a congressional delegation of authority to a particular post or position within an agency. *Id.*

B. The Act

The Act divides responsibility over private-sector labor relations between the National Labor Relations Board and the General Counsel of the Board. The General Counsel has "final authority, on behalf of the Board, in respect of the [investigation and prosecution of unfair labor practice complaints]," 29 U.S.C. § 153(d), whereas the Board adjudicates those complaints. This bifurcated structure reflects the intent of the Congress "to differentiate between the General Counsel's and the Board's 'final authority' along a prosecutorial versus adjudicative line." *NLRB v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 124 (1987).

In addition to mandating a separation of functions between the Board and the General Counsel, the Act specifically mandates a separation of authority over agency employees. Under the Act, the General Counsel

> shall exercise general supervision over all attorneys employed by the Board (other than administrative law judges and legal assistants to Board members) and over the officers and employees in the regional offices.

29 U.S.C. § 153(d).

C. Labor Relations at the Board

The employees of the Board have engaged in collective bargaining since before the enactment of the Statute and been subdivided for that purpose into six bargaining units separating employees based at headquarters from employees in the regional offices, professional employees from non-professional employees, and Board-side employees from GC-side employees.  In 2005 the Union, which was already the exclusive bargaining representative of each separate unit, petitioned the Authority to consolidate four of the six units into one bargaining unit.  As reflected in the following table, the consolidated unit would include all employees of the Board except professional employees based at headquarters.

| Employees | Before | After |
|-----------|--------|-------|
| Board-side Headquarters-based Non-professional | Separate Bargaining Unit | Single Bargaining Unit |
| GC-side Headquarters-based Non-professional | Separate Bargaining Unit | |
| GC-side Regional Non-professional | Separate Bargaining Unit | |
| GC-side Regional Professional | Separate Bargaining Unit | |

In 2006 a Regional Director of the Authority granted the Union's request over the objection of the Board, which argued consolidation would undermine the independent supervisory authority granted the General Counsel in § 3(d) by requiring the General Counsel to bargain jointly with the Board over his employees' conditions of employment. The Board applied to the Authority for review of the Regional Director's decision, and the Authority granted that application, noting the "absence of precedent" about "whether the statutory authority provided to the Agency's GC in § 3(d) precludes GC and Board employees from being included in the same bargaining unit." In 2007 the Authority found no conflict and affirmed the Regional Director's decision to consolidate the units, holding, *inter alia*, the history of cooperation between the Board and the General Counsel in labor relations undercut the Board's argument that § 3(d) precluded consolidation. *Nat'l Labor Relations Bd.*, 62 F.L.R.A. 25 (2007). Barred under 5 U.S.C. § 7123(a)(2) from seeking judicial review of the Authority's unit determination, the Board followed the only path open to it, as discussed in *Ass'n of Civilian Technicians v. FLRA*, 283 F.3d 339, 342 (D.C. Cir. 2002), "refusing to bargain, drawing an unfair labor practice charge, and appealing that charge to the Authority and then to a court of appeals." *Id.* at 343.

## II. Analysis

We review the Authority's decision holding the Board engaged in an unfair labor practice only "to determine whether it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Nat'l Ass'n of Gov't Employees v. FLRA*, 363 F.3d 468, 474–75 (D.C. Cir. 2004) (quoting 5 U.S.C. § 706(2)(a)). The issue in this case is solely one of accordance with law.

The Board argues its refusal to negotiate with the Union with respect to the consolidated unit was not an unfair labor practice because the unit was defined in violation of § 3(d) of the Act. According to the Board, (1) that section "requires the General Counsel to have independent authority over the employees it supervises, which includes labor relations," and (2) the inclusion of GC-side and Board-side employees in a single bargaining unit deprives the General Counsel of his statutory authority by forcing him to negotiate over his employees' conditions of employment jointly with the Board. We first explain why we agree with the Board on both points, then turn to the Union's and the Authority's suggestion that the appropriate unit determination is lawful regardless whether it conflicts with § 3(d) because the Statute supersedes the Act to the extent the two conflict.

A. Independent Authority of the GC

The parties dispute at some length whether § 3(d) mandates a "complete separation" of the Board and the General Counsel. The Board points to the instruction in § 3(d) that "the General Counsel shall exercise general supervision over all attorneys employed by the Board," and argues the Act mandates a "clear division of authority over NLRB personnel into two separate and independent spheres, one headed by the General Counsel and one by the Board." The Authority counters with a different clause in § 3(d) that grants the General Counsel "final authority, on behalf of the Board, in respect of the [investigation and prosecution of unfair labor practice complaints]"; it argues the latter clause shows the mandated separation "is limited to … investigative and prosecutorial functions."

The Authority also points out that under § 4(a) of the Act, 29 U.S.C. § 154(a), the Board is authorized to appoint attorneys, a grant of authority it argues is inconsistent with the Board's "complete separation" theory. Each agency claims support for its position in the same bit of legislative history, a passage in the Conference Report explaining:

> [The General Counsel] is to have the final authority to act in the name of, but independently of any direction, control, or review by, the Board in respect of [the investigation and prosecution of unfair labor practice complaints].

H.R. Rep. No. 80-510, 541 (1947). Finally, the parties dispute whether the Board's interpretation of the Act is entitled to deference.

We need not resolve whether § 3(d) mandates "complete separation," as the Board claims and the Authority denies. The Board's argument on this front requires us to decide only whether § 3(d), in providing the General Counsel "shall exercise general supervision" over all GC-side attorneys, makes the General Counsel independent of the Board with respect to the "conditions of employment" that are subject to collective bargaining under § 7102(2) of the Statute. We hold it does.

Whatever the precise meaning of "general supervision," the term clearly contemplates authority over some conditions of employment — such as employee grievance procedures and whether an attorney may work at home — that are also mandatory subjects of bargaining under the Statute, 5 U.S.C. §§ 7102(2), 7116(a)(5). The Authority conceded as much at oral argument. That is sufficient to establish that the General Counsel's statutorily-mandated supervisory independence is

implicated by the Authority's unit determination. We turn, then, to whether that unit determination, by combining Board-side and GC-side employees in the same unit, impermissibly interferes with the General Counsel's independence.

B. Effect of Consolidation

The Board argues that because, under the Authority's unit determination, the General Counsel and the Board will be forced "to negotiate one contract together," "the General Counsel will need the consent of the Board in exercising his supervisory authority" over his employees. That much is clear. Whether the Board and the GC would both need to sign a collective bargaining agreement or whether the Board alone could make such an agreement binding upon the GC, remains unclear. The Authority's decision is silent on this matter, its briefs offered no clarification, nor did counsel when asked at oral argument. In either case, however, the General Counsel would need the Board's consent in order to negotiate an agreement with the representative of his employees.

The Authority argues its determination is nonetheless consistent with § 3(d) because the Board, in negotiating with the Union, must and will respect the General Counsel's independent authority under § 3(d). It points out that for decades the General Counsel and the Board have engaged in "coordinated bargaining" over labor issues, which has usually resulted in similar or identical terms and working conditions for Board-side and GC-side employees. In light of this history of cooperation, the Authority reasons, it is

> reasonable to assume, as did the Authority [in making its appropriate unit determination], that future incumbents would not ignore the limitations of § 3(d)

and usurp control of the working conditions of employees of the other components.

The Authority can "assume" but it cannot provide any assurance the Board and the General Counsel will be able to treat each labor issue as either a matter entirely of Board-side or of GC-side concern or agree upon issues of common concern;[*] nor is there good reason to assume the history of coordination between the two will survive consolidation of their employees into a single bargaining unit. Good fences make good neighbors, as Robert Frost observed, but the Authority proposes to take down the fence. Neither we nor the Authority can blithely disregard the potential for discord in what have hitherto been viable collective bargaining relationships.

Significantly, the Authority offers no indication how a disagreement between the Board and the General Counsel could be resolved were one to develop. We suppose the General Counsel could force an impasse and elicit an unfair labor practice complaint that he is refusing to bargain, maintain his position of legal right through the various levels of review before the Authority, and eventually the court of appeals, thereby ultimately safeguarding his authority against intrusion. Empowering the Board to put the General Counsel to that considerable burden, however, in the sensitive context of collective bargaining is itself an undue interference with his supervisory authority. We conclude, therefore, that by subjecting the General Counsel's exercise of his supervisory

---

[*] That the Authority can muster no precedent to support its assumption is not surprising; the issue is sui generis because, as the Board argues and the Authority conceded at oral argument, the statutory separation mandated by § 3(d) is unique.

authority to the consent of the Board, the Authority's unit determination conflicts with § 3(d) of the Act.

## C. The Statute and the Act

The Union argues that, to the extent there is any conflict between the two, the Statute amends the Act by implication. *But see Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 134 (1974) ("A new statute will not be read as wholly or even partially amending a prior one unless there exists a 'positive repugnancy' between the provisions of the new and those of the old that cannot be reconciled" (internal quotation marks deleted)). At oral argument the Authority for the first time adopted this argument. As support the Union and the Authority point to § 7112(c) of the Statute, which section prohibits employees of an agency that administers a labor relations law (e.g., the Board) from being represented by a union that also represents employees to whom the Statute applies. This is evidence, they say, the Congress had the Act in mind when it wrote the Statute, and therefore must have intended the Statute to supersede the Act to the extent they conflict.

We need not determine whether the Statute amends the Act by implication because, in the decision under review, the FLRA claimed to have interpreted "both statutes so that they do not conflict" and affirmed the Regional Director's conclusion that "§ 3(d) does not preclude the consolidation." 62 F.L.R.A. at *13–14. Although "the court [will not] upset a decision because of errors that are not material," *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 851 (D.C. Cir. 1970), the Authority's erroneous interpretation of the Act plainly was material to its holding; therefore we must vacate the order under review.

In making unit determinations the Authority routinely takes into account delegations of responsibility prescribed by the Congress. *See U.S. Dep't of Def., Nat'l Guard Bureau*, 55 F.L.R.A. 657, 661 (1999). Had the Authority correctly interpreted the Act it might well have held the unit requested by the Union is not appropriate under the Statute for the reason it gave in the *National Guard* case, to wit, the "statutory scheme is not workable if employees do not have a right to negotiate with the same officials who exercise authority over" their conditions of employment. *Id.* at 661. That, however, is a matter for the Authority, not the court, to address in the first instance.

## III. Conclusion

The Authority relied upon an incorrect interpretation of § 3(d) in granting the Union's proposal to consolidate Board-side and GC-side employees into a single bargaining unit. In consequence, it erred in holding the Board engaged in an unfair labor practice when it refused to bargain with the Union over the conditions of employment in that unit. Accordingly, the petition for review is granted and the cross-petition for enforcement is denied.

*So ordered.*