# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 8, 2011       Decided February 7, 2012

No. 11-1102

UNITED STATES DEPARTMENT OF THE TREASURY,
BUREAU OF THE PUBLIC DEBT WASHINGTON, D.C.,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

NATIONAL TREASURY EMPLOYEES UNION,
INTERVENOR

On Petition for Review of a Final Decision
of the Federal Labor Relations Authority

*Howard S. Scher*, Attorney, United States Department of Justice, argued the cause for the petitioner. *Tony West*, Assistant Attorney General, and *William Kanter* and *Thomas M. Bondy*, Attorneys, were on brief.

*Rosa M. Koppel*, Solicitor, Federal Labor Relations Authority, argued the cause for the respondent.

*Peyton H.N. Lawrimore* argued the cause for intervenor National Treasury Employees Union. *Gregory O'Duden* and *Larry J. Adkins* were on brief.

Before: HENDERSON, ROGERS and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*:  The United States Department of the Treasury (Department) petitions for review of a decision of the Federal Labor Relations Authority (FLRA, Authority) that adopted a new standard to determine when a negotiated contract provision is an "appropriate arrangement" under 5 U.S.C. § 7106(b)(3) and an agency head's disapproval thereof will therefore be set aside. *Nat'l Treasury Emps. Union*, 65 F.L.R.A. 509 (2011).  Because the Department did not object to the new standard before the Authority—as required under 5 U.S.C. § 7123(c)—we dismiss the Department's petition for lack of jurisdiction.

**I.**

Negotiators for the Department's Bureau of Public Debt (BPD) and the National Treasury Employees Union (NTEU) signed a new collective bargaining agreement on April 7, 2010.  The agreement was submitted to the agency head for review pursuant to 5 U.S.C. § 7114(c), which provides in relevant part:

> (c)(1) An agreement between any agency and an exclusive representative shall be subject to approval by the head of the agency.
>
> (2) The head of the agency shall approve the agreement within 30 days from the date the agreement is executed if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation (unless the agency has granted an exception to the provision).
>
> (3) If the head of the agency does not approve or disapprove the agreement within the 30-day period, the agreement shall take effect and shall be binding on the agency and the exclusive representative subject to the

provisions of this chapter and any other applicable law, rule, or regulation.

The agency head disapproved the agreement on May 7, 2010, finding that sixty-two of its provisions "d[id] not conform to law, rule, or regulation." Memorandum for Angela Jones, Human Resource Officer, BPD, from Nicole A. Johnson, Associate Chief Human Capital Officer for Human Capital Strategic Management, U.S. Department of the Treasury (May 7, 2010) (JA 7). Before NTEU petitioned the FLRA for review of the disapproval, the parties reduced the number of disputed provisions to fifty-five, of which only three now remain.

Each of the first two disputed provisions sets out a performance-appraisal process for BPD employees who are detailed or temporarily promoted for fewer than 120 days, requiring, inter alia, that "performance expectations shall be confirmed in writing by the temporary supervisor before the employee can be held responsible for such performance expectations." *NTEU*, 65 F.L.R.A. at 509-10. The third disputed provision requires that a BPD employee who abuses emergency annual leave be "counseled concerning such abuse" before he may be disciplined therefor. *Id*. at 515. The agency head determined each of the provisions was nonnegotiable because it interfered with a management right accorded a federal agency under 5 U.S.C. § 7106(a)(2), namely the rights to direct and to discipline employees.[1] *See* Statement of Agency

---

[1]Section 7106(a) provides in relevant part:

(a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—

. . .

(2) in accordance with applicable laws—

Position, Legal Analysis, *NTEU*, Case No. 0-NG-3076, at 3, 5 (FLRA July 6, 2010) (JA 125, 127) (performance-appraisal provisions "not negotiable" because each "imposes a burden on management's right to direct employees under § 7106(a)(2)(A)"); *id.* at 7 (JA 129) (leave abuse provision "not negotiable because it excessively interferes with management's right to discipline under § 7106(a)(2)(A)").

The Federal Service Labor-Management Relations Act (Act), 5 U.S.C. §§ 7101 *et seq.*, generally requires a federal agency to bargain in good faith with a public employee union over conditions of employment. *See Ass'n of Civilian Techs. v. FLRA*, 534 F.3d 772, 776 (D.C. Cir. 2008); *NTEU v. FLRA*, 550 F.3d 1148, 1150 (D.C. Cir. 2008). Section 7106(a), however, exempts certain "management rights"—such as the duties to direct and discipline employees—from the agency's duty to bargain, making them ordinarily nonnegotiable. *NTEU v. FLRA*, 550 F.3d at 1150. Section 7106(b) nonetheless requires an agency to bargain over a proposal that affects a management right if the proposal constitutes an " 'appropriate arrangement[] for employees adversely affected' by the exercise of management rights." *Nat'l Ass'n of Gov't Emps., Inc. v. FLRA.*, 179 F.3d 946, 948 (D.C. Cir. 1999) (quoting 5 U.S.C. § 7106(b)(3)).

The FLRA uses a two-part test to determine whether a negotiated provision is an "appropriate arrangement" subject to bargaining notwithstanding it affects a protected management

---

> (A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
>
> . . . .

5 U.S.C. § 7106(a)(2)(A).

right. First, the Authority considers whether the provision is "intended to be an 'arrangement' for employees adversely affected by the exercise of a management right" guaranteed under section 7106(a)(2); if so, it next evaluates whether the arrangement is appropriate within the meaning of section 7106(b)(3)[2] and therefore subject to bargaining. *See NTEU v. FLRA*, 437 F.3d 1248, 1253 (D.C. Cir. 2006). Until now, the Authority has made the second determination using an "excessive interference" standard, i.e., finding a negotiated provision to be inappropriate if it " 'excessively interferes' with management's rights" as enumerated in section 7106(a). *NTEU*, 65 F.L.R.A. at 511 (quoting *Am Fed'n of Gov't Emps., Local 1770*, 64 F.L.R.A. 953, 959 (2010)).[3] In this case, however,

---

[2]Section 7106(b)(3) provides:

> (b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
>
> . . .
>
> (3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials.

5 U.S.C. § 7106(b)(3) .

[3]The Authority adopted the "excessive interference" in 1983 in response to our decision in *American Federation of Government Employees, Local 2782 v. FLRA*, 702 F.2d 1183 (D.C. Cir. 1983). There, we rejected the Authority's use of a "direct interference" test (making inappropriate any arrangement that *directly* interferes with a management right, regardless of the degree of interference) but we observed: "To say that the word 'appropriate' (in the phrase "appropriate arrangements" of paragraph (b)(3)) cannot bear this much weight is not to say that it can bear no weight at all. Undoubtedly, some arrangements may be inappropriate because they impinge upon management prerogatives *to an excessive degree*." 702 F.2d at 1188 (emphasis in original).

relying on its recent decision in *U.S. Environmental Protection Agency*, 65 F.L.R.A. 113 (2010), in which it replaced the excessive interference standard with an "abrogation" standard when reviewing arbitral awards,[4] the Authority similarly substituted the abrogation standard for review of an agency head's disapproval of a negotiated agreement. Under the abrogation standard, the Authority "will find that a contractual arrangement is an 'appropriate' arrangement within the meaning of § 7106(b)(3) . . . —and that an agency head may not disapprove such an arrangement on § 7106 grounds—unless the arrangement abrogates, or waives, a management right," that is, unless it " 'precludes [the] agency from exercising' the affected management right." 65 F.L.R.A. at 515 (quoting *U.S. Dep't of Transp.*, *Fed. Aviation Admin.*, 65 F.L.R.A. 171, 174 (2010)). Finding that the three contested provisions "limit" management's ability to exercise its rights but "do not preclude" their exercise altogether, two of the Authority's members concluded the provisions "are appropriate arrangements within the meaning of § 7106(b)(3)" and are therefore "not contrary to § 7106(a)(2)(A) and (B)" nor subject to agency head disapproval. *Id*. at 515. Accordingly, the Authority majority ordered the Department to "rescind its disapproval of the provisions." *Id*. at 519. The third member dissented from the majority's adoption of the abrogation standard and would have applied the excessive interference standard to invalidate the provisions as inappropriate arrangements.[5]

-----

[4]Over twenty years ago, the Authority adopted the abrogation standard in reviewing arbitral awards, *see Dep't of the Treasury, U.S. Customs Serv.*, 37 F.L.R.A. 309, 313-14 (1990), but returned to the excessive interference standard in 2002. *See U.S. Dep't of Justice, Fed. Bureau of Prisons*, 58 F.L.R.A. 109, 115 (2002).

[5]The Authority majority premised its adoption of the abrogation standard on the "plain wording" of the Act, contrasting the language

The Department filed a timely petition for review.

## II.

Before reaching the merits of the Department's arguments, we must satisfy ourselves that we have subject-matter jurisdiction. *Chamber of Commerce v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) (citing *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83 (1998)). Intervenor NTEU contests the court's jurisdiction on the ground the Department did not challenge the Authority's use of the abrogation standard before the Authority

---

of section 7114(c)(2)—which requires that an agency head approve a negotiated agreement "if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation"—with that of 5 U.S.C. § 7117(c)—which authorizes a union to appeal to the Authority an agency's claim that "the duty to bargain in good faith does not extend to any matter." 65 F.L.R.A. at 512. It determined that the difference between the two italicized phrases meant they were intended to bear different meanings so that a proposal's subject matter may be outside the duty to bargain (and therefore subject to negotiability challenge under section 7117(c)) and yet still be "in accordance with the provisions of this chapter and any other applicable law, rule, or regulation" and therefore not subject to disapproval by the agency head. Relying on its decision in *U.S. EPA*, it then concluded a contract provision is not contrary to section 7106—and therefore may not be disapproved by the agency head on that basis—unless it *abrogates* a management right accorded thereunder. The dissenting member responded that a proposal that is prohibited by section 7106(a) because it "impermissibly interferes with a management right" may "properly be characterized as being *both* outside the duty to bargain and not 'in accordance with the provisions of [the Act]' " so as to be "subject to agency head rejection under § 7114(c)(2)." 65 F.L.R.A. at 521 (Member Beck dissenting) (emphasis in original) (alteration added). The dissent also questioned the logic of "applying a different test for negotiability at the stage of agency head review than is applied at bargaining table." *Id.* We express no opinion on the merits of the abrogation standard.

itself as required by 5 U.S.C. § 7123(c).  We agree with NTEU that we lack subject matter jurisdiction under section 7123(c).

Section 7123(c) provides: "No objection that has not been urged before the Authority, or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances."  Where, as here, the Authority raises an issue sua sponte in its decision, section 7123(c) "precludes us from considering a pertinent objection if the petitioner has not raised the objection before the Authority in a request for reconsideration."  *Nat'l Ass'n of Gov't Emps., Local R5-136 v. FLRA*, 363 F.3d 468, 479 (D.C. Cir. 2004) (citing *U.S. Dep't of Commerce v. FLRA*, 7 F.3d 243, 245-46 (D.C. Cir. 1993)); *see* 5 C.F.R. § 2429.17 (authorizing motion for reconsideration).  The Department acknowledges it failed to move for reconsideration of the new abrogation standard but argues the omission should be excused for three reasons.

First, the Department invokes the "futility" exception to section 7123(c) which applies "when a request for reconsideration would be 'patently futile' in light of recent Authority decisions squarely addressing the issue in question."  *Local R5-136*, 363 F.3d at 479.  In particular, the Department relies on the Authority's decision in *U.S. EPA* in which "the Authority decided to return to the 'abrogation' standard, which had been used from 1990 to 2002, to decide cases involving the review of arbitration decisions under Section 7122(a)."  Reply Br. at 19; *see supra* note 3.  According to the Department, "in *EPA* the Authority had already made up its mind that it would apply 'abrogation' in the agency head review context, and no motion for reconsideration would have budged the Authority from that position."  Reply Br. 19; *see also* Pet'r's Opening Br. 26 n.11. The Department overstates the Authority's decision in *U.S. EPA*.  There, the Authority simply "note[d] that [its] analysis call[ed] into question whether abrogation also should be

the standard applied in negotiability cases involving contract provisions (where agreement has been reached and subsequently disapproved)." *U.S. EPA*, 65 F.L.R.A. at 118 n.11 (citing *U.S. Dep't of Justice, Bureau of Prisons*, 57 F.L.R.A. 158, 162 (2001)). Because *U.S. EPA* involved review of an arbitration and not of an agency head disapproval, the Authority expressly "le[ft] [the question] for another day." *Id*. Thus, *U.S. EPA* did not, as the Department claims, "squarely address[]" what standard applies to review of an agency head disapproval or indicate it had "already made up its mind" on the issue. Pet'r's Opening Br. 26 n.11; Reply Br. 19. Given the different contexts and the Authority's tentative tone in *U.S. EPA*, we cannot conclude it would have been patently futile for the Department to file the required reconsideration motion here. *Cf. W & M Props. of Conn., Inc. v. NLRB*, 514 F.3d 1341, 1346 (D.C. Cir. 2008) (to establish patent futility as "extraordinary circumstance[]" excusing failure to move for reconsideration under analogous provision of National Labor Relations Act, petitioner must "show that a motion for reconsideration was 'clearly doomed' by the agency's rejection of *identical* arguments" (emphasis added)); *NLRB v. FLRA*, 2 F.3d 1190, 1196 (D.C. Cir. 1993) (reconsideration motion challenging Authority's determination that proposal was arrangement would have been futile where it "seem[ed] clear that the FLRA would have rejected" it given Authority had "repeatedly held negotiable" similar proposals, "including two proposals that [court] view[ed] as *indistinguishable*" from proposal at issue (emphasis added)); *U.S. Dep't of the Interior Minerals Mgmt. Serv. v. FLRA*, 969 F.2d 1158, 1161 (D.C. Cir. 1992) (reconsideration motion disputing proposal was arrangement "would have been futile given that the Authority had just found an *identical* proposal negotiable under § 7106(b)(3)" (emphasis added)).

The Department also argues that moving for reconsideration would have been futile in light of the "vigorous" dissent, which

argued the Department's case for it—albeit to no avail. Reply Br. 20. The Department acknowledges that we considered and rejected the same argument in *Local R5-136*, 363 F.3d at 479-80; it attempts to distinguish this case, however, based on its "facts," asserting that "[f]utility is a case-by-case matter." Reply Br. 20 n.11, 21. According to the Department, *Local R5-136* "made the point that a dissenting opinion does not automatically satisfy Section 7123(c)'s requirements because a party must make clear to the Authority what its own arguments are" but, the Department argues, such "guidance" is inapplicable here because "the dissent raised *all* of the issues that the agency could have raised." Reply Br. 20 n.11 (emphasis in original). In *Local R5-136*, however, we rejected the petitioners' futility claim not only because it "presuppose[d] that a party's *position* is always coterminous with a dissenting opinion" but also because it "appear[ed] to assume that the *persuasive power* of a party's argument can never exceed the quality of a dissenting opinion," *Local R5-136*, 363 F.3d at 479 (emphases added)—a consideration that applies whether or not the substance of the party's arguments would have mirrored the dissent's. Because the Department made no objection to the new standard before the Authority, we cannot know how persuasive its hypothetical arguments might have been. Moreover, in *Local R5-136*, based on both the need to hear from the parties themselves and our precedent interpreting "virtually identical" language in the National Labor Relations Act, we did more than simply offer "guidance"—we established a jurisdictional prerequisite, stating: "Section 7123(c) *requires a party* to present its own views to the Authority in order to preserve a claim for judicial review." *Id*. (citing *Contractors' Labor Pool, Inc. v. NLRB*, 323 F.3d 1051, 1061 (D.C. Cir. 2003) (interpreting 29 U.S.C. § 160(e)) (emphasis added). Because the Department ignored this jurisdictional requirement, the Authority was left to make its decision and articulate its rationale without the views of either the Department or NTEU. For these reasons, here, as in *Local*

*R5-136*, "the dissent below did not excuse the [agency's] failure to raise its objections in a request for reconsideration." *Id.* at 480.[6]

Finally, we reject the Department's claim of "extraordinary circumstance" based on its assertions that (1) the abrogation standard will inevitably come up for review in "the very next agency head review case" and (2) "delay in resolving the issue will only cause confusion and uncertainty." Reply Br. 22. As an initial matter, the cited circumstances seem anything but "extraordinary"—they are, we think, a commonplace of litigation. Moreover, that the issue will arise again soon—and likely be resolved when it does—argues against the need for an irregular, accelerated resolution in this proceeding. Any "confusion and uncertainty" resulting from our adherence to section 7123(c)'s jurisdictional requirement will be speedily dispelled should the issue again arise in "the very next agency head review case."

Because the Department failed to move for reconsideration objecting to the Authority's use of the abrogation standard to review the agency head's disapproval of the negotiated agreement, we dismiss the Department's petition for lack of subject matter jurisdiction pursuant to 5 U.S.C. § 7123(c).

*So ordered.*

---

[6]The Department asserts that the FLRA's "failure to challenge the Court's jurisdiction here reflects the Authority's apparent agreement with the agency that a motion for reconsideration would have been futile." Reply Br. 21. We decline to draw so speculative an inference from the Authority's silence; in fact, at oral argument counsel for the FLRA assured the court its silence manifested no such agreement. In any event, the Authority can no more divine how it might have reacted to arguments not made than can the party that did not make them.