*1103 ROGERS, Circuit Judge,
concurring in the judgment:
I write separately regarding the distinction between the collateral estoppel doctrine and the Administrative Procedure Act’s requirement, as part of the prohibition on arbitrary or capricious agency action, that if an agency departs from its precedent it must provide a reasoned explanation for its decision to do so. Traditionally, precedent binds adjudicators and collateral estoppel precludes parties, yet the Authority conflates the two doctrines. Because the Authority has not provided a reasoned explanation for its departure from its precedent in U.S. Dep’t of Commerce, Patent & Trademark Office, 60 F.L.R.A. 839 (2005) (“PTO I”), pet. for review dismissed, Patent Office Profl Ass’n v. FLRA 180 Fed.Appx. 176 (D.C.Cir.2006), I would grant the petition for review without reaching the question of whether the Authority was arbitrary and capricious in its application of its own collateral estoppel doctrine.
I.
The Patent and Trademark Office (“the PTO”) makes two distinct, but related, claims regarding the Authority’s treatment of its precedent. The court’s review of both is to determine whether the Authority’s order was “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” 5 U.S.C. § 7123(c) (incorporating 5 U.S.C. § 7106’s standards); Nat’l Treasury Emps. Union v. FLRA 399 F.3d 334, 337 (D.C.Cir.2005). First, the PTO contends that the Authority unlawfully departed from its precedent in PTO I without providing a reasoned explanation. The Authority “must either follow its own precedent or ‘provide a reasoned explanation for’ its decision to depart from that precedent.” Nat’l Fed’n of Fed. Emps. v. FLRA 412 F.3d 119, 124 (D.C.Cir.2005) (quoting Local 32, Am. Fed’n of Gov’t Emps. v. FLRA, 774 F.2d 498, 502 (D.C.Cir.1985)). Second, the PTO contends that the Authority erred in applying its collateral estoppel doctrine, which it first adopted in Dep’t of the Air Force, Scott Air Force Base, III., 35 F.L.R.A. 978, 982-83 (1990). Here, the PTO observes that the Authority accepted the PTO’s “binding precedent” argument as a collateral estoppel argument. The second contention, however, only needs to be considered if the court rules in favor of the Authority as to the first. If the Authority did not provide a reasoned explanation for its departure from its precedent, our inquiry ends. If it did, then the court must determine if the Authority was arbitrary and capricious in applying its collateral estoppel doctrine.
A.
The court grants the petition on the basis of collateral estoppel. See Op. at 1100-02. There are good reasons not to address this argument.
First, it is questionable whether the PTO sufficiently raised the issue in its exceptions to the PTO II arbitrator’s award, and thus whether the court has jurisdiction to address this argument. “No objection that has not been urged before the Authority, or its designee, shall be considered by the court, unless the failure or neglect to urge the objection is excused because of extraordinary circumstances.” 5 U.S.C. § 7123(c). The PTO referred to PTO I as “binding precedent” in its exceptions but did not mention “collateral estoppel” or “issue preclusion.” Agency’s Exceptions to Arbitrator’s Award at 14, PTO II (Aug. 28, 2006). The Authority’s collateral estoppel doctrine, which *1104 it seemingly applies to itself, see infra Part I.B., involves a five-part test, see Scott Air Force Base, 35 F.L.R.A. at 982-83, no factor of which was expressly mentioned in PTO’s exceptions. A “generalized objection” that “implicitly” raises arguments is insufficient to satisfy the jurisdictional requirement. See U.S. Dep’t of Commerce, Nat’l Oceanic & Atmospheric Admin, v. FLRA, 7 F.3d 243, 245 (D.C.Cir.1993); see Nat’l Ass’n of Gov’t Emps., Local R5-136 v. FLRA, 363 F.3d 468, 479-80 (D.C.Cir. 2004) (construing NLRB and FLRA jurisdictional statutes identically).
Although the dissenting Member in PTO II would have ruled that the Authority was bound by collateral estoppel to apply its decision in PTO I, he noted only that the PTO’s exceptions were “rife with collateral estoppel implications.” PTO II, 65 F.L.R.A. at 301 (Member Beck, dissenting) (emphasis added). The majority’s discussion appears only in a brief footnote, dismissing the claim “[t]o the extent that the [PTO]’s exceptions can be construed as arguing” collateral estoppel. Id. at 295 n. 5 (emphasis added). Even though the Authority may have addressed the issue, “[s]ection 7123(c) requires a party to present its own views to the Authority in order to preserve a claim for judicial review.” U.S. Dep’t of the Treasury v. FLRA, 670 F.3d 1315, 1320 (D.C.Cir.2012) (internal quotation marks and citation omitted) (emphasis in original). “Discussion of an issue by the [Authority] does not necessarily prove compliance with section” 7123(c), and “the most delicate [§ 7123(c) ] questions arise in cases such as the one before us, where ... the objection is not unmistakable.” Local 900, Int’l Union of Elec., Radio & Mach. Workers v. NLRB, 727 F.2d 1184, 1191, 1193 (D.C.Cir.1984). The “delicate” nature of the issue, combined with the fact that it is unnecessary to the disposition of this appeal, counsel against deciding the question.
Second, the Authority’s precedent describing its collateral estoppel doctrine implies that the Authority itself can be collaterally estopped in its own proceedings by its prior decisions. In adopting the collateral estoppel doctrine in Scott Air Force Base, the Authority spoke in terms of both “the party [being] precluded,” and “the Authority [being] estopped,” 35 F.L.R.A. at 983; see also U.S. Dep’t of Energy W. Area Power Admin., Golden, Colo., 56 F.L.R.A. 9, 9-12 (2000) (discussing whether the administrative law judge was collaterally estopped). To the extent the Authority suggested that collateral estoppel applies to itself, however, the Authority misconstrues the collateral estoppel doctrine. In Clark-Cowlitz Joint Operating Agency v. FERC, 826 F.2d 1074 (D.C.Cir. 1987) (en banc), the court explained the difference in considering whether the Federal Energy Regulatory Commission (“FERC”) was “precluded” from changing its statutory interpretation of a provision that gave licensing preference to municipal, rather than private, power plants, after the Eleventh Circuit had already upheld its opposite interpretation:
It is true as a general matter that preclusion principles can apply to parties to administrative proceedings.... The doctrine of preclusion is meant to prevent parties from rearguing issues they have already lost.... It was the decision-maker, FERC, that changed its position. Thus, to the extent preclusion analysis is appropriate at all, it is applicable to the extent FERC participated as a party before the Eleventh Circuit. Preclusion principles are meant to provide an affirmative defense that one party to a prior proceeding may raise against another party that took an adverse position in that proceeding.
Id. at 1080 n. 5 (second emphasis in original); see also United States v. Andrews, 479 F.3d 894, 900 (D.C.Cir.2007) (stating *1105 that collateral estoppel “requires that a party be estopped from relitigating an identical issue previously decided.”) (emphasis added); Black’s Law Dictionary 298 (9th ed.2009) (defining collateral estoppel as “a doctrine barring a party from relitigating an issue determined against that party in an earlier action.”) (emphasis added).
To the extent collateral estoppel is relevant in the instant case, it is not a question of whether the Authority is precluded by its order as the decisionmaker in PTO I, it is instead whether the Authority was arbitrary and capricious in not precluding the Union from relitigating against the PTO an issue it had lost in PTO I.[1] Although the Authority, or arbitrators and administrative law judges may reach an incorrect decision in applying (or not applying) the collateral estoppel doctrine to parties’ arguments, they, as adjudicators, are not themselves “estopped” by prior decisions. Because “collateral estoppel ... [is an] affirmative defense[ ] that must be pleaded,” Rivet v. Regions Bank of Louisiana, 522 U.S. 470, 476, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (internal quotation marks and citation omitted), or else is waived, see Dep’t of Treasury v. FLRA, 762 F.2d 1119, 1121 (D.C.Cir.1985), it is odd to speak of the Authority as being estopped in its own proceedings.
This is not to say that an agency cannot ever be precluded or estopped in administrative proceedings. Instead, an agency may be precluded, whether in an administrative adjudication or in court, if it was in the position of a party in an earlier adversary proceeding and attempts, as a party in a later proceeding, to relitigate an issue. Cf Graphic Commc’ns Int’l Union, Local 554 v. Salem-Gravure Div. of World Color Press, Inc., 843 F.2d 1490, 1493 (D.C.Cir. 1988); see also Drummond v. Comm’r of Soc. Sec., 126 F.3d 837, 841 (6th Cir.1997); Medina v. INS, 993 F.2d 499, 503-04 (5th Cir.1993); 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4475 (2d ed.2002) (citing cases). Because the Authority’s order in PTO I was held to be unappealable, see Patent Office Prof'l Ass’n v. FLRA, 180 Fed.Appx. 176 (D.C.Cir.2006); 5 U.S.C. § 7123(a)(1), the Authority was not a party in any proceeding to which issue preclusion could apply to its PTO I order. The importance of clarity and precision in distinguishing between precedent that may bind an adjudicator (absent a reasoned explanation for departure) and the effect of collateral estoppel on parties is highlighted by the operation of statutes strictly limiting judicial review of agency adjudications to those claims specifically urged before the agency, as illustrated above. See, e.g., 5 U.S.C. § 7123(c) (governing judicial review of Authority orders); 29 U.S.C. § 160(e) (governing judicial review of National Labor Relations Board orders); 15 U.S.C. § 717r(b) (governing judicial review of Federal Energy Regulatory Commission orders).
B.
As the court recounts, see Op. at 1097-98, in PTO I, the Authority concluded that Section A.2[2] of the parties’ agreement of *1106 January 4, 2001, was not an “appropriate arrangement” under 5 U.S.C. § 7106(b)(3)[3] because it “ameliorates adverse effects that result from the operation of law, not the exercise of a management right.” PTO I, 60 F.L.R.A. at 842. In particular, the Authority rejected the Union’s argument that Section A.2 was instead an “appropriate arrangement” in response to the PTO’s elimination of paper patent files and inclusion of a customer service element in performance plans. Id To the contrary, the Authority upheld in the instant case an arbitrator’s conclusion that Section A.2 was an “appropriate arrangement” aimed at ameliorating the effects of the elimination of paper patent files and the introduction of customer service requirements. See U.S. Dep’t of Commerce Patent & Trademark Office, 65 F.L.R.A. 290, 295-96 (2010) (“PTO II”).
The Authority’s denial that it departed from its PTO I precedent is unavailing. As the court explains, see Op. at 1100-01, the Authority relied on the proposition that different arbitrators can interpret the same contract differently based on their being “presented with different facts and arguments,” PTO II, 65 F.L.R.A. at 295, to suggest that there has been no departure from precedent. This is plainly wrong. The Authority, not the arbitrator, ruled in PTO I that Section A.2 was unlawful under 5 U.S.C. § 7106(b)(3). The Authority must, consistent with the Administrative Procedure Act’s requirements, squarely address why this precedent should be changed: “[A]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from tolerably terse to intolerably mute.” W & M Props. of Conn., Inc. v. NLRB, 514 F.3d 1341, 1347 (D.C.Cir.2008) (internal quotation marks and citation omitted) (emphasis added). Because the Authority failed to provide a reasoned analysis for departing from its precedent, I concur in the judgment granting the petition for review.
II.
A final note regarding the Authority’s collateral estoppel doctrine is in order. The Union as intervenor contends that because PTO I was held unappealable, it was not collaterally estopped by PTO I from arguing in the instant case that Section A.2 was an “appropriate arrangement.” Because PTO I did not involve review of an unfair labor practice arbitration, this court lacked jurisdiction to review the Authority’s order. See Patent Office Prof'l Ass’n, 180 Fed.Appx. 176; 5 U.S.C. § 7123(a)(1).
As a general matter, collateral estoppel does not apply to preclude relitigation of an issue when the earlier determination was unappealable. See Restatement (Second) of Judgments § 28 (1982). “The fact that an agency adjudication was subjected *1107 to judicial review and was upheld is a factor that supports giving it preclusive effect.” Id. § 88, cmt. c. The purpose of this exception is to “ensure the quality of the initial decision,” 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4421 (2d ed.2002), before binding future litigants to it. The court’s precedent is clear that a party is not precluded, by an unappealable agency determination, from litigating an issue in a later court proceeding. See Sea-Land Serv., Inc. v. Dep’t of Transp., 187 F.3d 640, 648 (D.C.Cir.1998); Alabama Mun. Distribs. Grp. v. FERC, 312 F.3d 470, 473 (D.C.Cir.2002). Although the court has yet to decide whether this exception applies to prevent preclusion in subsequent administrative proceedings, it has emphasized that “administrative proceedings vary much more widely than judicial proceedings” and thus “as a general matter preclusion principles are to be applied more flexibly to administrative adjudications than to judicial proceedings.” Clark-Cowlitz, 826 F.2d 1074, 1080-81 n. 5; see also Restatement (2d) Judgments § 83(1) & cmt. f (applying rules and exceptions for judicial collateral estoppel, §§ 27-28, to administrative collateral estoppel).
In Scott Air Force Base, the Authority adopted its collateral estoppel doctrine based on the requirements that “courts have determined ... must be satisfied.” 35 F.L.R.A. at 982. In so doing the Authority had no occasion to determine whether the general exception to collateral estoppel for unappealable determinations would also apply to the Authority’s application of the collateral estoppel doctrine; Scott Air Force Base involved Authority review of unfair labor practice arbitrations, see id. at 983, cases over which judicial review is available, see 5 U.S.C. § 7123(a)(1). Similarly, the Authority had no occasion to consider whether other general exceptions to the doctrine would apply in its proceedings, for example where there are intervening changes in law, where factors relating to the allocation of jurisdiction between two adjudicative bodies are implicated, or where the burden of persuasion has shifted between the parties in the subsequent action. See Restatement (Second) of Judgments § 28(1)-(5)(1982), see also id. § 83(1) & cmt. f.
The Union’s contention raises the appealability question unaddressed by the Authority in Scott Air Force Base and unanswered by this court’s precedent. The reason PTO I was unappealable is, however, critical to whether the exception applies. There is a “major distinction [] between decisions of a sort that ordinarily cannot be appealed and decisions that are ineligible for appeal only because of some special circumstance.” 18A Wright & Miller § 4433. Preclusion is denied to cases of the latter category, e.g., where a case becomes moot pending an appeal. Id. On the other hand, “[decisions of a sort that ordinarily cannot be appealed may be surrounded by alternative protections or special policies that support preclusion.” Id. Such is the case here, where PTO I was not made unappealable by special circumstances, but by Congress. In enacting 5 U.S.C. § 7123(a)(1), Congress was concerned with aligning the scope of judicial review of private and public sector arbitrations and “the conferees determined it would be inappropriate for there to be subsequent review by the Court of Appeals in such matters.” H.R. Conf. Rep. No. 95-1717, at 153 (1978), reprinted in 1978 U.S.C.C.A.N. 2860, at 2887 (1978); see U.S. Dept. Navy v. FLRA 665 F.3d 1339, 1344 (D.C.Cir.2012).
Because Congress deemed the Authority qualified to provide the final judgment on arbitration awards not involving unfair labor practice allegations, the concern underlying the general rule that only appeal-able decisions have preclusive effects — ie., *1108 that appellate review “ensure[s] the quality of the initial decision,” 18 Wright & Miller, § 4421 — does not apply. And so the Authority erred in failing to apply collateral estoppel to the Union’s attempt to reargue that Section A.2 was an “appropriate arrangement.” The broader question, whether this and other exceptions to the collateral estoppel doctrine also apply to agencies’ applications of the doctrine (as they do to courts), remains to be decided another day.

. In concluding that our precedent suggests the PTO’s exceptions may not have sufficiently raised a collateral estoppel argument, I suggest no deviation from the general rule that res judicata (or claim preclusion) and collateral estoppel (or issue preclusion) apply to final decisions of administrative tribunals. See Op. at 1102-03 n. 7. Had the Authority provided a reasoned explanation for departing from its precedent, it would be necessary to decide whether the court has jurisdiction and if so to address the merits of the collateral estoppel argument. Furthermore, ClarkCowlitz confirms that the Authority misapplies the collateral estoppel doctrine to itself; but neither it nor I suggest decisions of administrative agencies cannot have preclusive effect.

. Section A.2 of the parties’ agreement provides:
*1106 The [PTO] shall request OPM approval for tire next five years to increase the special pay schedule so as to maintain the 10% and 15% salary differentials relative to the updated GS rates, in a manner consistent with OPM regulations. If OPM refuses the request, the Agency shall enter into discussions with [the Union] in order to provide substantially equivalent alternatives.
For purposes of the instant appeal there is no relevant distinction between the first and second sentences. See Op. at 1101-02.

. 5 U.S.C. § 7106, "Management rights,” provides in subsection (b)(3): "Nothing in this section shall preclude any agency and any labor organization from negotiating ... (3) appropriate arrangements for employees adversely affected by the exercise of any authority under this section by such management officials."